**MADISON CONSULTING GROUP, a general partnership, Plaintiff-Appellant,**

v.

**The STATE OF SOUTH CAROLINA; Santee Cooper, South Carolina Public Service Authority owned as an asset by the State of South Carolina; William C. Mescher, individually and as President and Chief Officer of Santee Cooper; Clarence S. Gramling, individually and as Senior Vice President—Systems Operations of Santee Cooper; and James M. Wooten, individually and as Supervisor—Dam Maintenance of Santee Cooper, Defendants-Appellees.**

**No. 84-1160.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 13, 1984.

Decided Jan. 4, 1985.

Rehearing and Rehearing En Banc Denied March 8, 1985.

**1194**

Timothy J. Casper, McBurney, Wyngaard & Wilson, Madison, Wis., for plaintiff-appellant.

John A. Hansen, Stafford, Rosenbaum, Rieser & Hansen, Madison, Wis., for defendants-appellees.

Before FLAUM, Circuit Judge, and SWYGERT and FAIRCHILD, Senior Circuit Judges.

FLAUM, Circuit Judge.

The sole question presented by this appeal is whether the Fourteenth Amendment permits Wisconsin to assert personal jurisdiction over defendants-appellees in this diversity case arising from a contract dispute. The court below held that it does not, finding the case to be controlled by *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.*, 597 F.2d 596 (7th Cir.1979), *cert. denied*, 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980). For the reasons set forth below, we reverse and remand.

## I. FACTS

This case represents another chapter in the continuing saga of the constitutionality of personal jurisdiction based exclusively on a nonresident defendant's contractual contacts with a forum plaintiff. The plaintiff-appellant in this case is Madison Consulting Group ("MCG"), a three-partner general partnership in the business of economic consulting, with its only office located in Madison, Wisconsin. Defendants-appellees are the State of South Carolina; Santee Cooper (the common name for the South Carolina Public Service Authority), a corporation owned as an asset by the State of South Carolina and involved in developing the resources of several rivers in that state; and several individual defendants who are officers of Santee Cooper. The defendants have no jurisdictionally significant contacts with Wisconsin save those arising from the contract at issue in this case.

Santee Cooper initiated the negotiations leading to this contract through its Washington, D.C. counsel, Joseph Swidler. Swidler had recommended that his client hire MCG to prepare a study and report for the Federal Energy Regulatory Commission on various economic issues concerning the North Dam on the Santee River in South Carolina. In September 1982, Swidler therefore placed a phone call from Washington, D.C. to MCG partner Charles Cicchetti in Madison, Wisconsin, inviting Cicchetti to meet in Washington with Santee Cooper representatives to discuss the project. Cicchetti accepted the invitation, and traveled to Washington at Santee Cooper's expense. On September 14, 1982, Cicchetti met in Washington and discussed the project with Swidler, another attorney for Santee Cooper, and defendant James Wooten.[1]

---

1. Representatives of MCG and Santee Cooper met several more times to discuss the contract, but never in Wisconsin. Both parties' affidavits reflect that these meetings were held in Washington, D.C., South Carolina, and one other state, but differ as to whether the other state was Illinois or Georgia. *Compare* Mescher Affidavit ¶ 7 *with* Cicchetti Affidavit ¶ 7. Santee Cooper paid the travel expenses incurred by

The parties' discussions culminated in Cicchetti's preparation of a written proposal, which he sent to Wooten in South Carolina on September 23, 1982. Defendant Mescher accepted this proposal five days later, and mailed a copy of the executed contract back to MCG in Wisconsin. The agreement required MCG to complete the study and report for Santee Cooper very quickly—by November 1982. Although the contract did not expressly dictate the place of performance, Santee Cooper understood that MCG would perform most of the work at its offices in Madison, Wisconsin. *Madison Consulting Group v. State of South Carolina*, No. 83–C–905–S, slip op. at 3 (W.D.Wis.1983) ("Memorandum Opinion").

MCG in fact completed 85% of its performance in Wisconsin, and the balance in South Carolina. A dispute later developed over the amount of fees that Santee Cooper owed to MCG, and MCG then sued defendants in the Circuit Court of Dane County, Wisconsin. Defendants removed the suit to the United States District Court of the Western District of Wisconsin on the basis of diversity, and then moved to dismiss on various grounds, including lack of personal jurisdiction.

■ The district court granted the motion to dismiss for lack of personal jurisdiction. Memorandum Opinion at 13. Since the personal jurisdiction of a federal court sitting in diversity is determined by the long-arm statutes of the state in which the court is sitting, *Lakeside*, 597 F.2d at 598, the court began by assessing whether Wisconsin's long-arm statute authorized jurisdiction over defendants. The court found that one subsection of the Wisconsin statute appeared to authorize jurisdiction over defendants, and assumed arguendo that another subsection also provided for jurisdiction. Memorandum Opinion at 5. The bulk of the district court's analysis was devoted to the question of whether personal jurisdiction over defendants was consti-

tutionally permissible.[2] The court replied in the negative, almost exclusively on the authority of this court's decision in *Lakeside*.

## II. THE *Lakeside* DECISION

In *Lakeside*, this court held that a nonresident defendant's ordering of goods from a Wisconsin plaintiff, coupled with defendant's knowledge that the goods would be manufactured in and shipped from Wisconsin, were constitutionally insufficient to allow personal jurisdiction over the defendant in Wisconsin. Like the present case, *Lakeside* arose from a contract dispute between the parties. Unlike the present case, however, the contract at issue was solicited by the plaintiff, Lakeside Bridge & Steel Company, rather than by the defendant, Mountain State Construction Company. *See Lakeside*, 597 F.2d at 598. Lakeside agents traveled from Wisconsin to Mountain State's offices in West Virginia to offer Lakeside's services in manufacturing some structural steel assemblies for use in a construction project on which Mountain State was preparing to bid. When Mountain State was awarded the main contract for the project, it accepted Lakeside's offer by mailing a purchase order to Wisconsin.

After receiving the order, Lakeside modified it by adding a provision that the goods were to be shipped "F.O.B. SELLERS PLANT MILWAUKEE, WISCONSIN," and then sent the modified order to Mountain State, which implicitly approved the new term by treating the order as effective. Lakeside manufactured the assemblies at its plant in Wisconsin, and then shipped them to the construction site in Virginia. Other than the events described above, along with assorted letters and telephone calls exchanged by the parties, Mountain State had no contacts upon which to base personal jurisdiction in Wisconsin.

MCG members in attending these meetings also. Cicchetti Affidavit ¶ 7.

**2.** This is now the sole issue on appeal. Defendants' counsel conceded in oral argument before

this court that, assuming the constitution permits it, the Wisconsin long-arm statute authorizes personal jurisdiction.

In a carefully reasoned opinion by Judge Tone, the court held that the defendant lacked the "minimum contacts" with the forum state required for personal jurisdiction under the Fourteenth Amendment. *See id.* at 600; *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In order to determine the meaning of the "minimum contacts" requirement in the context of the case, the court in *Lakeside* reviewed the major Supreme Court decisions on the issue. The court took "little guidance" from *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957),[3] a decision that authorized personal jurisdiction based on relatively limited contacts between the defendant and the forum state. *See Lakeside,* 597 F.2d at 600. Rather, the court observed that *McGee* "was based in substantial part on the nature of the business of insurance and must be read in conjunction with the subsequent decision in *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)." *Lakeside,* 597 F.2d at 600.

The court in *Lakeside* relied heavily on *Hanson* for its analytical approach, quoting this key passage from the Supreme Court opinion:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case

that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Hanson v. Denckla,* 357 U.S. at 253, 78 S.Ct. at 1239–40. *See Lakeside,* 597 F.2d at 600. Noting that the Supreme Court had recently reaffirmed *Hanson*'s "purposeful availment" test in *Shaffer v. Heitner,* 433 U.S. 186, 216, 97 S.Ct. 2569, 2586, 53 L.Ed.2d 683 (1977),[4] the court in *Lakeside* proceeded to apply it as the governing constitutional standard.

On the facts in *Lakeside,* the court found that the defendant had committed no act connected with Wisconsin sufficient to constitute purposeful availment, reasoning that:

> Although Mountain State in a sense caused the activity in Wisconsin by placing the order, the contract between the parties left Lakeside in absolute control over where it would conduct that activity, and it made this decision and conducted the activity unilaterally. Mountain State's belief, which we may assume existed, that Lakeside would choose to perform its contractual obligations in Wisconsin does not constitute an invocation of the benefits and protections of Wisconsin's laws.

597 F.2d at 603.[5] In a footnote to this discussion, however, the court limited the potential sweep of its holding by stating:

> We express no opinion on whether the result would be different if the contract

---

**3.** In *McGee,* the first major Supreme Court decision on personal jurisdiction after *International Shoe,* the Court held that a beneficiary under a life insurance contract could sue the Texas insurer in California state court when the insurer had originally solicited the contract by sending a reinsurance certificate to the insured in California, the insured had mailed the premiums from his California residence, and the insured had died a resident of California. *McGee,* 355 U.S. at 223, 78 S.Ct. at 201. Although the Court stated generally that "[i]t is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that state," *id.,* it also based its holding on a number of factors somewhat unique to the insurance business, including California's "manifest interest in providing effective means of redress for its residents when their insurers

refuse to pay claims." *Id.* at 223–24, 78 S.Ct. at 201.

**4.** In another oft-quoted passage, the Court in *Shaffer* stated that "the relationship among the defendant, the forum, and the litigation" is "the central concern of the inquiry into personal jurisdiction." *Shaffer v. Heitner,* 433 U.S. at 204, 97 S.Ct. at 2580.

**5.** The court also discussed briefly and rejected several additional factors urged by plaintiff to support personal jurisdiction in Wisconsin, including the contract term specifying shipping as F.O.B. Wisconsin, the fact that contacts were sufficient to allow defendant to sue plaintiff in Wisconsin, defendant's use of interstate mail and telephone to communicate with plaintiff in

required the plaintiff to perform in the forum state or if the nature of the plaintiff's contractual obligations made performance in the forum state necessary. *Id.* at 603 n. 13.

The court similarly stressed the unique facts of *Lakeside* in the process of distinguishing a Wisconsin Supreme Court decision, *Zerbel v. Federman & Co.*, 48 Wis.2d 54, 179 N.W.2d 872 (1970), which had upheld personal jurisdiction under somewhat similar circumstances. First, the court noted that in the Wisconsin case, in contradistinction to *Lakeside*, "[t]he defendant had initiated the negotiations" that led to the contract at issue. 597 F.2d at 599. Second, the contract in *Lakeside* was for the manufacture of goods, while the contract in the Wisconsin case was for services:

> ... and some of the important evidence, relating to the nature and value of the services, would have to come from plaintiff and his Wisconsin records. The latter fact, if no other, makes a contract for services different from a contract for the sale of goods from the standpoint of what the Wisconsin court called the "balancing of inconveniences."

*Id.*[6]

Despite these limitations on the scope of its holding in *Lakeside*, the court itself recognized that both federal and state courts were badly split over the correctness of its basic conclusions. *See id.* at 601. Moreover, while the Supreme Court denied certiorari in the case, 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980), Justices White and Powell dissented from the denial, noting that "the question of personal jurisdiction over a nonresident corporate defendant based on contractual dealings with a resident plaintiff has deeply divided the federal and state courts." *Id.* at 909, 100 S.Ct. at 1089.[7]

## III. DEVELOPMENTS IN THE LAW OF PERSONAL JURISDICTION SINCE *Lakeside*

### A. Supreme Court Decisions

Although the Supreme Court has yet to resolve the conflict over the specific issue presented in *Lakeside*,[8] the Court has since decided several cases that generally help define the constitutional reach of personal jurisdiction. In his opinion for the Court in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), for example, Justice White offered this explanation of the origin and purpose of constitutional limitations on personal jurisdiction:

> The concept of minimum contacts, in turn, can be seen to perform two related, but distinguishable, functions. It pro-

Wisconsin, and the large dollar amount of the contract at issue. *Lakeside*, 597 F.2d at 603–04.

**6.** Nevertheless, as defendants argue in their brief to this court, the importance of these distinctions to the *Lakeside* holding is somewhat uncertain, since the court in *Lakeside* concluded its discussion of the Wisconsin decision by stating:
> Notwithstanding all this, we recognize the possibility, if not the likelihood, that that court would reach the same conclusion in a case such as the one before us. It is our duty, in any event, to decide the due process issue for ourselves.

*Lakeside*, 597 F.2d at 599.

**7.** The dissent further stated that this "disarray also strongly suggests that prior decisions of this court offer no clear guidance on the question." *Id.*, 445 U.S. at 911, 100 S.Ct. at 1089.
> Because of the division in the courts on this issue, we limit our focus in this case to precedents of this circuit and the Supreme Court.

**8.** Justice White, joined by the Chief Justice and Justice Powell, recently observed that the "disarray among federal and state courts noted in *Lakeside* has continued," and reiterated his call for a Supreme Court decision resolving the *Lakeside* issue. *Chelsea House Publishers v. Nicholstone Book Bindery, Inc.*, 455 U.S. 994, 102 S.Ct. 1623, 71 L.Ed.2d 856 (1982) (White, J., dissenting from denial of certiorari). *See also Baxter v. Mouzavires*, 455 U.S. 1006, 102 S.Ct. 1643, 71 L.Ed.2d 875 (1982) (White, J., dissenting from denial of certiorari).
> The Court, however, may soon be presented with an opportunity to resolve the issue, albeit on different facts, by deciding an appeal of the Eleventh Circuit's decision in *Burger King Corp. v. Macshara*, 724 F.2d 1505 (11th Cir.1984). The Court has postponed further consideration of the question of its jurisdiction of the appeal pending its hearing of the case on the merits. *See Burger King Corp. v. Rudzewicz*, — U.S. ——, 105 S.Ct. 77, 83 L.Ed.2d 25 (1984).

tects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system.

*Id.* at 291–92, 100 S.Ct. at 564.

In serving its first function as a "protection against inconvenient litigation," the Court stated, the minimum contacts requirement essentially contemplates a "reasonableness" test, which implies "the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors." *Id.* at 292, 100 S.Ct. at 564.[9] With regard to the second function, the Court stated:

Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as *an instrument of interstate federalism*, may sometimes act to divest the State of its power to render a valid judgment.

*Id.* at 294, 100 S.Ct. at 565.[10]

In its more recent decision in *Insurance Corp. of Ireland v. Compagnie des Baux-ites de Guinee*, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982), however, the Court, again through Justice White, significantly modified its earlier statements on the role of federalism in personal jurisdiction analysis. In that case, the Court held that a federal district court could constitutionally assume personal jurisdiction over defendants as a discovery sanction under Federal Rule of Civil Procedure 37(b)(2)(A). 456 U.S. at 701–07, 102 S.Ct. at 2103–07. In reaching the conclusion that personal jurisdiction, unlike subject matter jurisdiction, can be waived by a party to a lawsuit, the Court stated:

The personal jurisdiction requirement recognizes and protects an individual liberty interest. It represents a restriction on judicial power *not as a matter of sovereignty*, but as a matter of individual liberty. Thus, the test for personal jurisdiction requires that "the maintenance of the suit ... not offend 'traditional notions of fair play and substantial justice.' " *International Shoe v. Washington*, 326 U.S. 310, 316 [66 S.Ct. 154, 158, 90 L.Ed. 95] (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463 [61 S.Ct. 339, 342, 85 L.Ed. 278] (1940).

*Id.* at 702–03, 102 S.Ct. at 2104–05.[11]

The ultimate impact of the Court's abandonment of federalism as an independent constitutional constraint on personal juris-

9. According to the Court, such factors include: "the forum State's interest in adjudicating the dispute, ... the plaintiff's interest in obtaining convenient and effective relief, ... at least when that interest is not adequately protected by the plaintiff's power to choose the forum, ... the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies ...." *World-Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564.

10. The Court attributed this passage, and thus the role of federalism in personal jurisdiction analysis, to *Hanson*. *World-Wide Volkswagen*, 444 U.S. at 294, 100 S.Ct. at 565. Language in the *Hanson* opinion seems to support such an interpretation. *See* 357 U.S. at 251, 78 S.Ct. at 1238 (restrictions on personal jurisdiction "are more than a guarantee of immunity from inconvenient or distant litigation. They are a conse-

quence of territorial limitations on the power of the respective States."). Nevertheless, in *Shaffer v. Heitner*, 433 U.S. at 204 n. 20, 97 S.Ct. at 2580 n. 20, a case decided prior to *World-Wide Volkswagen*, the Court appeared to reject a federalism interpretation of *Hanson*, stating that the above-quoted statement from *Hanson* "simply makes the point that the States are defined by their geographical territory." *Id.*

Thus, the theoretical origins of *Hanson*, and perhaps the "purposeful availment" test it enunciated, are still uncertain. These origins, however, could prove important in light of the Supreme Court's abandonment of federalism as an independent constraint on personal jurisdiction, as discussed below.

11. Noting its earlier statements seemingly to the contrary, the Court stated that "[t]he restriction on state sovereign power described in *World-Wide Volkswagen Corp.*, however, must be seen

diction is uncertain.[12] The Court in *Insurance Corp. of Ireland* did state, in response to Justice Powell's concurring opinion,[13] that "our holding today does not alter the requirement that there be 'minimum contacts' between the nonresident defendant and the forum state." *Id.*, 456 U.S. at 703 n. 10, 102 S.Ct. at 2104 n. 10. The Court's analysis in *Insurance Corp. of Ireland,* however, may give different content to the "minimum contacts" requirement than the earlier analysis in *World-Wide Volkswagen.* By disavowing one of *World-Wide Volkswagen's* two stated functions for "minimum contacts"—the protection of state sovereignty—the analysis in *Insurance Corp. of Ireland* appears to give determinative significance to the other stated function—the protection against inconvenient litigation. The latter function, according to the analysis of *World-Wide Volkswagen* itself, contemplates a broad-ranging reasonableness test, considering not only the burden on the defendant, but a variety of other relevant factors. *See World-Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564.[14]

The Supreme Court's other recent decisions on personal jurisdiction likewise prescribe a fact-intensive fairness inquiry for determining whether "minimum contacts" exist. Thus, quoting *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977), the Court has stated that the constitutionality of personal jurisdiction depends upon a consideration of "the relationship among the defendant, the forum, and the litigation." *See Helicopteros Nacionales de Colombia v. Hall,* —— U.S. ——, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984); *Keeton v. Hustler Magazine, Inc.,* —— U.S. ——, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984). The Court in *United States v. Morton,* —— U.S. ——, 104 S.Ct. 2769, 2773–74, 81 L.Ed.2d 680 (1984), similarly reaffirmed that "personal jurisdiction protects the individual interest that is implicated when a nonresident defendant is haled into a distant and possibly inconvenient forum," *id.,* 104 S.Ct. at 2773 (citing *Insur-*

as ultimately a function of the individual liberty interest preserved by the Due Process Clause. That clause is the only source of the personal jurisdiction requirement and the clause itself makes no mention of federalism concerns." *Insurance Corp. of Ireland,* 456 U.S. at 702–03 n. 10, 102 S.Ct. at 2105 n. 10.

**12.** One commentator has argued that *Insurance Corp. of Ireland* indicates that a nonresident defendant's contractual relationship with a forum plaintiff is by itself a constitutionally adequate minimum contact. *See* Comment, *Minimum Contacts and Contracts: the Breached Relationship,* 40 Wash. & Lee L.Rev. 1639, 1658–60 (1983). This contention rests primarily on the premise that "[c]ircuits that deny courts jurisdiction over nonresident defendants whose only contact with the forum is a single contract base their restrictive analysis on federalism." *Id.* at 1658. *Cf. Lakeside,* 597 F.2d at 603 (" '[a] state should not improperly impinge upon the interests of other states by trying in its courts a case with which it has no adequate relationship.' ") (quoting *Restatement (Second) of Conflict of Laws* Sec. 24, Comment b (1971)). Thus, it is argued, the Supreme Court's abandonment of federalism in its personal jurisdiction analysis should lead to different results in circuits such as this one.

**13.** *See id.,* 456 U.S. at 714, 102 S.Ct. at 2110 (Powell, J., concurring) ("By eschewing reliance on the concept of minimum contacts as a 'sover-

eign' limitation on the power of states ... the Court today effects a potentially substantial change of law. For the first time it defines personal jurisdiction solely by reference to abstract notions of fair play.").

**14.** In this connection, it is worth noting that the Fifth Circuit recently interpreted the Supreme Court's statements in *Insurance Corp. of Ireland* as undermining the "two-pronged" test for personal jurisdiction that had been enunciated by the Circuit in *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 494 (5th Cir.1974). *See Burstein v. State Bar of California,* 693 F.2d 511, 518 n. 12 (5th Cir.1982). This test provided that "the defendant must have minimum contacts with the forum state and it must be fair and reasonable for the state to require the defendant to defend the suit there." *Burstein,* 693 F.2d at 518 n. 12. The court in *Burstein* reasoned:

Given the Supreme Court's statement in *Insurance Corp. of Ireland* ... that the single test is that "the maintenance of the suit ... not offend 'traditional notions of fair play and substantial justice,' " ... and that the requirement of minimum contacts is a result of that test ... we do not believe that the *Cousteau* court's characterization of the test as "two-pronged" can any longer be justified. *Id.*

*ance Corp. of Ireland,* 456 U.S. at 694, 701–03 & n. 10, 102 S.Ct. at 2099, 2103–05 & n. 10), and further observed that:

> The strength of this interest in a particular case ... can be determined only by evaluating a specific aggregation of facts, as well as the possible vagaries of the law of the forum, and then determining if the relationship between the defendant ... and the forum, or possibly the particular controversy, makes it reasonable to expect the defendant to defend the action that has been filed in the forum State.

*Id.,* 104 S.Ct. at 2773–74.

**B. Seventh Circuit Decisions**

In a series of cases decided since *Lakeside,* this court has further defined the parameters of that decision. Less than six months after *Lakeside* was decided, the court was compelled to decide the question expressly reserved in *Lakeside,* 597 F.2d at 603 n. 13: whether jurisdiction over a defendant is proper when the contract at issue requires plaintiff to perform in the forum. *See Biltmoor Moving and Storage Co. v. Shell Oil Co.,* 606 F.2d 202 (7th Cir.1979). The court answered in the affirmative, upholding personal jurisdiction in Illinois where the plaintiff, a moving company, had agreed to help the defendant relocate some of its facilities from Illinois to Texas. Under these circumstances, the court held that "the moving contract absolutely required substantial and lengthy performance within Illinois" by all parties to the contract. *Id.* at 207.

Moreover, Judge Tone, the very author of the opinion in *Lakeside,* soon thereafter spoke again for the court in a decision that established another important limitation on the *Lakeside* doctrine. *See Wisconsin Electrical Manufacturing Co. v. Pennant Products, Inc.,* 619 F.2d 676 (7th Cir.1980). The court therein held that two visits by agents of the nonresident defendant to the forum state in connection with the negotiation and performance of the contract with the plaintiff "are enough, in our opinion, to distinguish this case from *Lakeside.*" *Id.* at 677. *See also Nieman v. Rudolf Wolff*

*& Co.,* 619 F.2d 1189 (7th Cir.1980) (issued on the same day as *Pennant Products* and written by Judge Tone, holding that a defendant's meeting with plaintiff in the forum to solicit business and negotiate the contract at issue distinguished *Lakeside* and authorized personal jurisdiction). Its basis for finding personal jurisdiction in *Pennant Products,* the court cautioned, was not the mere existence of " 'a foot-fall on the State's soil,' " *id.* at 678 n. 8 (quoting *Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc.,* 239 F.2d 502, 509 (4th Cir. 1956)), but rather that the visits of defendant Pennant Products "were significant to the formation of the contract and Pennant's efforts to have it satisfactorily performed." 619 F.2d at 678. The court found *Lakeside* distinguishable even though, "[i]ronically, the same [district] court whose judgment was reversed in *Lakeside* dismissed this action in the reasonable belief that this case was close enough to *Lakeside* to be decided the same way." *Id.* at 679.

These decisions set the tone for subsequent Seventh Circuit cases, which have consistently reaffirmed the *Lakeside* rule, but have construed it flexibly based on the unique circumstances of each case. Thus, when a defendant's contacts with the forum state have been as—if not more—limited than those of the defendant in *Lakeside,* this court has denied personal jurisdiction. *See, e.g., Froning & Deppe, Inc. v. Continental Illinois National Bank & Trust Co.,* 695 F.2d 289 (7th Cir.1982) (defendant-bank's sole contact was its acceptance and remittal of a single check drawn upon another bank located in the forum state); *Jadair, Inc. v. Walt Keeler Co.,* 679 F.2d 131 (7th Cir.) (defendant's only contact was its ordering of a machine from a forum manufacturer), *cert. denied,* 459 U.S. 944, 103 S.Ct. 258, 74 L.Ed.2d 201 (1982); *Koster v. Automark Industries,* 640 F.2d 77 (7th Cir.1981) (defendant's only contacts with forum consisted of mail and telephonic communications); *Nu-Way Systems v. Belmont Marketing, Inc.,* 635 F.2d 617 (7th Cir.1980) (defendant's sole contact was

plaintiff's performance in the forum). As in *Pennant Products*, however, this court has also distinguished *Lakeside* and upheld jurisdiction when the defendant has traveled to the forum state to solicit or transact business with the plaintiff. *See Jacobs/Kahan & Co. v. Marsh*, 740 F.2d 587 (7th Cir.1984); *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209 (7th Cir. 1984).

This court also has observed that the "due process inquiry under *International Shoe* and its progeny is usually not exhausted, however, by an assessment of the burden placed upon the non-resident defendant." *Froning & Deppe*, 695 F.2d at 293–94. Therefore, even in cases where the primary issue is whether the defendant's contacts are sufficient to distinguish *Lakeside*, such factors as the interest of the forum state and convenience have also been considered. *See id.* at 294. *See also Jacobs/Kahan & Co. v. Marsh*, 740 F.2d at 592–93; *Neiman v. Rudolf Wolff & Co.*, 619 F.2d at 1195 n. 8; *Pennant Products*, 619 F.2d at 678 n. 9. Although these factors have been described as of "secondary importance," *Pennant Products*, 619 F.2d at 678 n. 9, this means simply that they can be outweighed in those cases where "there is ... an egregious absence of contacts, ties or relations between the defendant and the forum state." *See Froning & Deppe*, 695 F.2d at 295.[15]

## IV. ANALYSIS

 Based on the authorities discussed above, we find no violation of due process in subjecting defendants to suit in Wisconsin. Contrary to the district court, we believe that major factual differences meaningfully distinguish this case from *Lakeside* in terms of both the requirement of purposeful availment by a defendant, and other factors relevant to the reasonableness of exercising personal jurisdiction.[16]

Before the district court and in this appeal, MCG has asserted two bases for distinguishing *Lakeside* insofar as the requirement that "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state." *See Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. at 1239–40. First, MCG claims that because of Santee Cooper's demand that performance under the contract be completed within such a short period of time, and since all of the resources necessary for performance were located in MCG's Wisconsin offices, "the nature of the plaintiff's contractual obligations made performance in the forum state necessary." *See Lakeside*, 597 F.2d at 603 n. 13. The district court rejected this contention, concluding that the circumstances in this case did not make MCG's performance in Wisconsin "necessary" as that term was used in *Lakeside*. On this point, we agree with the district court.

MCG's argument simply proves too much. While a contract that is otherwise silent as to the plaintiff's place of performance may intrinsically require performance in the forum, as did the mover's contract in *Biltmoor*, 606 F.2d at 202, such is not the case merely because plaintiff's sole office or manufacturing plant is located there. The contractual requirement exception to *Lakeside* is not triggered simply by the fact that the contract at issue, by a term specifying a deadline or otherwise, effectively denies the plaintiff the purely theoretical opportunity to uproot all of its operations and commence performance at some new location. MCG's interpretation would permit personal jurisdiction over a nonresident defendant predicated essentially on the act of entering into a contract with a

---

**15.** After considering various factors that it denominated as "the balance of state and federal interests and policies," the court in *Froning & Deppe* nevertheless concluded that the nearly total lack of contacts between the defendant and the forum would have barred personal jurisdiction even if the balance of interests favored the plaintiff. *Froning & Deppe*, 695 F.2d at 293–95.

**16.** Because we conclude that the present case is distinguishable from *Lakeside*, we decline to reconsider the *Lakeside* rule in light of subsequent developments in the law of personal jurisdiction. *Cf. supra* note 12.

forum plaintiff with knowledge that the plaintiff would perform in the forum. This interpretation creates an exception that would swallow the *Lakeside* rule.

As a second reason for distinguishing *Lakeside*, MCG stresses that Santee Cooper solicited the contract by first contacting MCG through Santee Cooper's legal counsel, and by inviting an MCG partner to travel to Washington at Santee Cooper's expense in order to negotiate the contract. The district court found this argument similarly unpersuasive, reasoning that despite the reference in *Lakeside* to the fact that the plaintiff had initiated the transaction there, the rationale of the decision—that the mere ordering of goods by the defendant is insufficient to constitute "purposeful availment"—renders equally inadequate the defendant's mere initiation of a contractual transaction with the plaintiff. Memorandum Opinion at 8–9. The district court also found *Pennant Products* inapplicable because the defendant in that case had actually entered the forum state in connection with the negotiation and performance of the contract. *Id.* at 9–10.

■ We part with the district court's reasoning because on this issue, as Chief Judge Cummings recently stated, "[w]e think the inflexibility of *Lakeside* has been exaggerated." *Jadair, Inc. v. Walt Keeler Co.*, 679 F.2d at 134. It cannot be disputed that Santee Cooper's activities in soliciting the contract with MCG, whether or not they are deemed adequate for due process purposes, contrast starkly with the relative passivity of the defendant in *Lakeside*. Indeed, as far as initial solicitation is concerned, *Lakeside* is virtually the polar opposite of the present case: agents of the *plaintiff* in *Lakeside* solicited the contract by personally traveling to the defendant's offices in West Virginia. The real issue, of course, is whether this clear factual difference should lead us to a different result on personal jurisdiction. We believe that it should.

The question of which party initiated or solicited a business transaction has long been considered pertinent to the constitutional propriety of personal jurisdiction in a suit arising out of the transaction. In fact, the Supreme Court has attributed its earlier holding in *McGee*, 355 U.S. at 220, 78 S.Ct. at 199, at least partly to the fact that the nonresident insurance company defendant there solicited the insurance contract with the resident plaintiff. *See, e.g., Kulko v. Superior Court of California*, 436 U.S. 84, 97, 98 S.Ct. 1690, 1699, 56 L.Ed.2d 132 (1978); *Hanson v. Denckla*, 357 U.S. at 251, 78 S.Ct. at 1238 (distinguishing *McGee* on this basis). Case law in this circuit, although it apparently has not directly addressed the question of whether a nonresident defendant's solicitation of a contract suffices to distinguish *Lakeside*, has considered a defendant's solicitation of the transaction at issue to be a relevant factor. This court has pointed to the fact that the defendant did not initiate the transaction as a factor militating against personal jurisdiction, *see Telco Leasing, Inc. v. Marshall County Hospital*, 586 F.2d 49, 52 (7th Cir. 1978) (per curiam); *McBreen v. Beech Aircraft Corp.*, 543 F.2d 26, 31 (7th Cir.1976), and in at least one case has cited the fact that the defendant did initiate the negotiations leading to the contract by phoning the plaintiff as support for its finding that personal jurisdiction was proper. *See O'Hare International Bank v. Hampton*, 437 F.2d 1173, 1176–77 (7th Cir.1971). *Cf. Froning & Deppe*, 695 F.2d at 292–93 (in denying personal jurisdiction, distinguishing various cases involving solicitation of business by defendants).[17]

---

17. The two cases cited by the defendants are not to the contrary. In *Orton v. Woods Oil and Gas Co.*, 249 F.2d 198 (7th Cir.1957), the court indeed did not consider solicitation in its discussion of personal jurisdiction, but this was in a case where "it appear[ed] that plaintiffs were initially contacted and employed, not by defendant corporation, but by its predecessor." *Id.* at 202. And in *Sed, Inc. v. Bohager/Goodhues, Inc.*, 538 F.Supp. 196 (E.D.Wis.1982), both parties appeared to share some responsibility for solicitation of the transaction at issue: defendant learned of the plaintiff's business from an advertising circular sent to him, and defendant then contacted the plaintiff by phone. *Id.* at 197.

Moreover, district courts in this circuit have repeatedly addressed the question of whether *Lakeside* can be distinguished based on a nonresident defendant's solicitation of a contract. In a variety of circumstances, these courts have replied affirmatively, relying on the defendant's solicitation of the plaintiff as a factor supporting their decision to assert personal jurisdiction. *See, e.g., L.B. Sales Corp. v. Dial Manufacturing, Inc.,* 593 F.Supp. 290 (E.D.Wis.1984) (mailing of letter); *Welles Products Corp. v. Plad Equipment Co.,* 563 F.Supp. 446 (N.D.Ill.1983) (telephone call); *Felicia, Ltd. v. Gulf American Barge, Ltd.,* 555 F.Supp. 801 (N.D.Ill.1983) (telephone call); *Océ-Industries v. Coleman,* 487 F.Supp. 548 (N.D.Ill.1980) (telephone calls). *See also W & W Farms, Inc. v. Chartered Systems Corp. of New York,* 542 F.Supp. 56, 59 (N.D.Ind.1982); *Forty-Eight Insulations, Inc. v. Johns-Manville Products Corp.,* 472 F.Supp. 385, 390–91 (N.D.Ill.1979).

In some of those cases, the defendant's solicitation of the plaintiff amounted to no more than a single communication that initiated negotiations of the transaction at issue. Santee Cooper, however, not only initiated the negotiations with MCG by a phone call from its counsel, but also induced an MCG partner to travel cross-country to discuss the potential contract, all completely at Santee Cooper's expense. By so actively reaching out to solicit the services of a Wisconsin partnership in connection with this contract, we conclude that defendants have purposefully established contacts with Wisconsin that easily satisfy the dictates of constitutional due process.[18]

Unlike the district court, we do not deem defendants' solicitation efforts here as comparable to the defendant's mere act of ordering goods from a forum corporation in *Lakeside*. In commercial transactions, the actual ordering of goods—like the signing and execution of a contract—is often no more than the final link in a long transactional chain connecting the parties, and thus might not be considered an adequate commercial contact in itself to establish personal jurisdiction. *Cf. Lakeside,* 597 F.2d at 604 ("formalities of contract execution are not determinative for purposes of jurisdiction"). Nevertheless, when a defendant is responsible for initiating several significant links with the forum plaintiff leading to the transaction at issue, this is sufficient to satisfy the Fourteenth Amendment.

Further, contrary to the district court's conclusion that such cases as *Pennant Products* are distinguishable from the present case based on the defendants' actual presence in the forum state, we believe that the rationale of those cases applies equally here. For example, when this court in *Pennant Products* created an exception for cases where the defendant traveled to the forum in connection with important contract business, it emphasized that it was not adopting "a foot-fall on the State's soil" as the test for personal jurisdiction. *See Pennant Products,* 619 F.2d at 678 n. 8. Indeed, in another decision to the same effect, the court stressed the defendant's solicitation of the plaintiff, and not merely the act of entering the forum, in upholding jurisdiction. *See Nieman v. Rudolf Wolff & Co.,* 619 F.2d at 1194 & n. 6. We decline now to create a rule that would require a

---

**18.** Thus, our holding does not "attach[ ] controlling significance to one seemingly trivial fact, namely, which party made the initial telephone call to the other." Defendants' Brief at 13. *Cf. Lakeside,* 597 F.2d at 604 ("Use of the interstate telephone and mail service to communicate with a Wisconsin plaintiff, if constituting contacts supporting jurisdiction, would give jurisdiction to any state into which communications were directed."). Rather, we simply hold that, on the facts presented here, defendants' contacts in connection with the solicitation of plaintiff are pervasive and significant enough to justify personal jurisdiction.

In deciding this case, we are also acutely aware that, as Judge Tone stated in *Pennant Products,* "[s]o long as long-arm jurisdiction reaches to the outermost limits due process will permit and so long as due process standards continue to be susceptible only of a case-by-case application, reasonable minds will differ in particular cases." *Pennant Products,* 619 F.2d at 679.

defendant to step across state lines as a predicate for personal jurisdiction.

Our finding of personal jurisdiction, however, does not rest exclusively on defendants' solicitation activities. We also consider relevant, although not dispositive, plaintiff's performance of the contract in Wisconsin, which was clearly contemplated by the defendants at the time of contracting. While this factor does not distinguish the present case from *Lakeside*, it does constitute another meaningful contact between defendants and Wisconsin. Defendants here entered into a time of the essence contract that contemplated performance in the forum, the contract was in fact performed in the forum, and the contract is the focus of this litigation brought in the forum. These circumstances fortify our conclusion that "the relationship among the defendant, the forum, and the litigation," *Shaffer v. Heitner*, 433 U.S. at 204, 97 S.Ct. at 2580, makes it reasonable to require defendants to litigate this case in Wisconsin. *Cf. Koster v. Automark Industries*, 640 F.2d at 79–80 (finding no personal jurisdiction where contract for the manufacture of goods was neither executed nor expected to be performed in the forum).

Another important factor in our analysis is the inconvenience that might result if plaintiff were compelled to bring this suit in some other forum. This factor was suggested by MCG's argument, rejected by the district court, that *Lakeside* is distinguishable from the present case because the contract here was for services rather than goods, and thus that all the evidence relevant to the suit is located in Wisconsin. While noting *Lakeside's* reasoning that in some circumstances the presence of important evidence in the forum might make a services contract different from a goods contract for personal jurisdiction purposes insofar as a court inquires into the "balancing of inconveniences," the court below found that it:

> ... must conclude that this line of inquiry is not proper. The question under *International Shoe* is whether it is fair

to force a defendant to litigate in the plaintiff's forum, not whether it is unfair or difficult to force the plaintiff to litigate in the defendant's forum.

Memorandum Opinion at 7.

■ The precedents of the Supreme Court and this circuit on personal jurisdiction do not require our inquiry to be so narrow. It is true that the defendant's burden is "always a primary concern" in the due process analysis, *see World-Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564, but it is determinative exclusive of other factors only in those cases where there is "an egregious absence of contacts, ties or relations between the defendant and the forum state." *Froning & Deppe*, 695 F.2d at 295. Such is plainly not the case here.

We therefore consider the fact that all of the records relevant to this action are located in MCG's Wisconsin offices as an additional factor suggesting the reasonableness of jurisdiction in Wisconsin. The accessibility of the pertinent documentary evidence makes Wisconsin potentially the more convenient forum for both parties as well as the court. Nevertheless, we do not recognize any inherent distinction between goods and services contracts for purposes of due process. Such a distinction would be difficult to administer because of the substantial definitional overlap between contracts for "goods" and "services," and thereby would mire our analysis of personal jurisdiction in a number of largely irrelevant factors.

Even after factoring in "an assessment of the inconveniences that would result to the defendant by allowing jurisdiction in the forum," *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d at 1214, we conclude that personal jurisdiction is proper here. While interstate travel is somewhat inconvenient for any defendant, the defendants or their agents in this case, apparently by their own choice, have traveled outside South Carolina on several occasions to discuss business with plaintiff's agents. Defendants not only have borne their own expenses for this travel, but have paid all

of plaintiff's expenses as well. By these activities, defendants have demonstrated a much greater capacity than plaintiffs for absorbing the cost and inconvenience of interstate travel.

One additional factor here that favors personal jurisdiction in Wisconsin merits mention. Since plaintiff is a Wisconsin resident, the forum has an interest in this controversy. This interest may not be as great as it would be in a tort case, *see Lakeside*, 597 F.2d at 602–03 n. 11, but even in commercial contract cases, the forum has an interest that carries at least some weight in the due process calculus. *See Neiman v. Rudolf Wolff & Co.*, 619 F.2d 1195 n. 8.

## V. CONCLUSION

In sum, we find that "the relationship among the defendant, the forum, and the litigation," *Shaffer v. Heitner*, 433 U.S. at 204, 97 S.Ct. at 2580, justifies personal jurisdiction under the Fourteenth Amendment in this case. The judgment is therefore reversed and the case remanded for proceedings consistent with this opinion.

SWYGERT, Senior Circuit Judge, concurring in the result.

In *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.*, 597 F.2d 596 (7th Cir.1979), *cert. denied*, 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980), this court held that the mere negotiation, execution, and performance of a commercial contract between a plaintiff-Wisconsin merchant and a defendant-nonresident of Wisconsin—even though a purposeful act on the part of the defendant to assume some "contact" with Wisconsin, even though plaintiff performed the contract in Wisconsin, and even though both performance and an eventual lawsuit on the contract in that forum were foreseeable—were insufficient to establish minimum contacts between the nonresident defendant and Wisconsin. That case is controlling here. Accordingly, I cannot join the reasoning of the majority opinion, which finds personal jurisdiction here by distinguishing *Lakeside*. Because,

however, I believe that *Lakeside* was wrongly decided and should be overruled, I concur in the result.

### I

The majority distinguishes *Lakeside* by discerning an additional "contact" here: Santee Cooper's solicitation of MCG's business. *Ante* at 1202–1203. That solicitation consisted of a telephonic inquiry as to MCG's interest in doing business with Santee Cooper and reimbursement for the expenses of MCG's representative to fly to Washington, D.C. to negotiate a contract. Placing a phone call to Wisconsin and flying a Wisconsin resident to Washington, D.C. are not activities conducted within Wisconsin. In order to satisfy the requirement of "some act by which defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Lakeside*, 597 F.2d at 600 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)), such out-of-State activities must have sufficient in-State effects to be considered a "contact" with Wisconsin. *See id.* at 602 (quoting and discussing *Restatement (Second) of Conflict of Laws* § 50 (1971)). The most significant in-State effect of this solicitation was that it culminated in a $50,000 services contract that was substantially performed by MCG in Wisconsin. Yet this is precisely the kind of in-State effect that *Lakeside* held to be insufficient to establish personal jurisdiction.

It is true that solicitation has effects in the forum State apart from the ensuing contract. But here the only such in-State effect was to cause a Wisconsin resident to leave the State temporarily and to cause him and his company to invest time and effort into persuading Santee Cooper that it was worthy of a consulting contract. All of these costs incurred in reliance on the solicitation could be quantified, and surely the resulting figure would pale in comparison to the $50,000 contract. If the $50,000 contract is not a sufficient in-State effect, I

fail to see how the negligible collateral effects of the solicitation tip the scales in favor of jurisdiction.

The majority, however, discerns a qualitative difference between the contacts represented by the solicitation and those represented by the resulting contract. Unlike the "passive" defendant in *Lakeside*, the defendant here took the initiative by actively seeking out the business of a Wisconsin company. *See ante* at 1202–03. Such aggressiveness constitutes purposeful availment of the privilege of conducting activities within the forum State and somehow makes it "fair" to haul the defendant into the courts of the plaintiff's home State.

Such an argument seems both factually incorrect and legally irrelevant. In a commercial transaction between merchants of roughly comparable bargaining power, neither party truly can be defined as "passive." That the defendant here made the first telephone call does not distinguish the nature of the instant commercial transaction from that in *Lakeside*.[1] In both cases it can safely be assumed that the defendant was quite active in pursuing its own interests during the bargaining process. Furthermore, it is not clear why the relative aggressiveness of the defendant should be jurisdictionally relevant. The aggressiveness of the defendant does clearly indicate the defendant's "purposefulness" in associating itself with a Wisconsin concern. But the assumption of a $50,000 contractual obligation is no less purposeful. Moreover, *Lakeside* holds that the decision to do business with a Wisconsin company—however purposeful—is not sufficient to establish the requisite minimum contacts with Wisconsin. This decision to do business is not in itself an activity conducted within Wisconsin. *See Lakeside*, 597 F.2d at 603. Here, as in *Lakeside*, the only activity conducted within Wisconsin is the plaintiff's unilateral decision to perform the contract in Wisconsin. The "unilateral activity of [one] who claim[s] some relationship with a nonresident defendant ... cannot satisfy the requirement of a contact with the forum State." *Id.* (quoting *Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. at 1240 (1958)).

In short, the defendant's aggressive solicitation of MCG's business does not provide a contact with Wisconsin that is qualitatively different from that provided by the contract. Both the solicitation and the decision to contract took place outside Wisconsin.[2] Ultimately the only link with Wisconsin, both here and in *Lakeside*, is the plaintiff's unilateral decision to perform the contract in Wisconsin. Although it can be argued that the solicitation and the decision to contract caused important in-State effects—the performance of the contract in Wisconsin—the *Lakeside* decision express-

---

1. The majority notes that the defendant's solicitation efforts included not just a telephone call initiating negotiations between the parties, but also its inducement of "an MCG partner to travel cross-country to discuss the potential contract, all completely at Santee Cooper's expense." *Ante* at 1203. The Supreme Court in *Kulko v. Superior Court of California*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978), indicated that this latter consideration bears no jurisdictional significance. The defendant in *Kulko* consented to his daughter's wishes to move from New York to California and paid her airfare. The Court found that California could not constitutionally exert jurisdiction over the New York defendant and rejected the California court's reasoning that the purposeful act required by *Hanson v. Denckla* was defendant's "'actively and fully consent[ing] to Ilsa [his daughter] living in California for the school year ... and ... send[ing] her to California for

that purpose.' 19 Cal.3d [514], at 524 [138 Cal. Rptr. 586 at 591], 564 P.2d [353], at 358." *Kulko*, 436 U.S. at 94, 98 S.Ct. at 1698.

2. On three occasions, this court has deemed solicitation to be of sufficient jurisdictional significance to merit a different result from that in *Lakeside*. In all three cases, however, the solicitation and contract negotiation took place inside the forum State. *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209 (7th Cir.1984); *Neiman v. Rudolf Wolff & Co.*, 619 F.2d 1189 (7th Cir.), *cert. denied*, 449 U.S. 920, 101 S.Ct. 319, 66 L.Ed.2d 148 (1980); *Wisconsin Electrical Manufacturing Co., Inc. v. Pennant Products*, 619 F.2d 676 (7th Cir.1980). Because the solicitation and contract negotiation in the case at bar did not take place in the forum State, the exception to the *Lakeside* rule created by these three cases is not apposite.

ly repudiated this argument. *See Lakeside*, 597 F.2d at 603.[3]

To be sure, the Supreme Court has indicated that solicitation conducted out-of-State, through the interstate mails, can be jurisdictionally significant under some circumstances. *See ante* at 1202. In *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the Court upheld California's exercise of jurisdiction over the defendant-Texas insurer where the insurer sought a commercial benefit in California by soliciting through the mails the plaintiff-consumer's business. *See also Kulko*, 436 U.S. at 97, 98 S.Ct. at 1699 (discussing *McGee*). But the *Lakeside* court found *McGee* inapposite in the nonconsumer context. The contact with the forum State in *McGee* may be ascribed to the forum State's special interest in regulating the solicitation and performance of insurance contracts with resident consumers who lack bargaining power. *See Lakeside*, 597 F.2d at 600 & nn. 5, 6.[4]

Although the majority emphasizes that its finding of personal jurisdiction does not rest exclusively on Santee Cooper's solicitation activities, *see ante* at 1203, the three other proposed "contacts" do not suffice to establish jurisdiction. These three contacts are (1) the performance of the contract in Wisconsin, *ante* at 1203–04; (2) the "inconvenience that might result if plaintiff were compelled to bring this suit in some other forum," *ante* at 1204, 1204–05; and (3) the interest of the forum in the controversy, *ante* at 1205.

Neither the first nor the third factor distinguishes the case at bar from *Lakeside*. The majority concedes that the first factor was also present, and disavowed, in *Lakeside*. *See ante* at 1203. As for the interest of the forum State in the controversy, both *Lakeside* and the present case arose from a breach of contract action initiated by a Wisconsin merchant against a nonresident corporation. The interest of the forum State in the controversy is therefore identical in both cases and cannot be used to distinguish *Lakeside* from the instant case.

As for the second proposed contact, the majority acknowledges that the balance of conveniences is not a concern of primary importance. *Ante* at 1204. The Supreme Court has indicated that even if the defendant would suffer no inconvenience, "The Due Process Clause 'does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations.' *International Shoe Co. v. Washington, supra*, [326 U.S.] at 319 [66 S.Ct. at 160]." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294, 100 S.Ct. 559, 565, 62 L.Ed.2d

---

**3.** The majority also attempts to find a qualitative difference between solicitation and the contract by downplaying the latter as "no more than the final link in a long transactional chain connecting the parties." *Ante*, at 1203. Yet, solicitation, which has no legal ramifications, seems insignificant in comparison to the "final link" of ordering goods, which has the comparatively draconian legal effect of allowing the plaintiff to invoke the coercive power of government to enforce the bargain. In any event, whatever commercial significance the solicitation may have for the relationship between the parties, what ultimately concerns us here is the relationship between the forum and the defendant. Because the solicitation did not have any significant in-State effects, it is jurisdictionally irrelevant.

**4.** A commercial contract might be analogous to the insurance contract in *McGee* if the commercial contract resulted from a similar imbalance

of bargaining power. That is, if an out-of-State defendant used its strong bargaining position to extort a hard bargain from the resident plaintiff and then sought to further exploit the plaintiff by forcing it to litigate in a distant State in order to obtain legal relief, perhaps such commercial exploitation might be considered a sufficiently harmful in-State effect to justify jurisdiction. *Cf. Burger King Corp. v. Macshara*, 724 F.2d 1505, 1512 (11th Cir.) (in light of the disparity in bargaining power between franchisor and franchisee, "this is one of those cases where 'there is something to the notion that a party who has gone into a foreign State to do business with one of its residents can be expected to go back to bring suit.' [Currie, *The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois*, 1963 U.Ill.L.Forum 533, 574.]"), *appeal pending*, —— U.S. ——, 105 S.Ct. 77, 83 L.Ed.2d 25 (1984). There is no indication in the case at bar that the plaintiff suffered from any inequity in bargaining power.

490 (1980).[5] *Lakeside* requires that we find no jurisdictionally cognizable contacts here because the only relation between the defendant and the forum State is the unilateral decision of the plaintiff to perform the contract in Wisconsin. *Lakeside,* 597 F.2d at 603. Because there are no contacts here, *World-Wide Volkswagen* requires us to conclude, in turn, that there can be no jurisdiction regardless of the balance of conveniences.

In sum, there are no legally significant factual distinctions between this case and *Lakeside.* Unless we choose to overrule *Lakeside,* that case must be considered controlling here.

## II

Unlike the majority, *see ante* at 1201, n. 16, I would reach the issue of whether *Lakeside* should be overruled. Because I believe that it should, I concur that the Wisconsin federal district court could constitutionally exercise jurisdiction over the defendants.

The *Lakeside* holding is premised on the assumption that performance of the contract by the plaintiff in the forum State is a unilateral act of one who claims some relation with the nonresident defendant. *Lake-*

*side,* 597 F.2d at 603. The plaintiff's performance of a contractual obligation exacted by the defendant in return for consideration can hardly be considered unilateral. Although the contract may not require the plaintiff to perform in the forum State, in both the present case and in *Lakeside* the contract causes such performance. By requiring the tender of goods or services within a period of time that did not allow the plaintiff any choice other than to perform the contract substantially in Wisconsin, the *Lakeside* defendants and the instant defendants were responsible for activities in the forum State that inured to their benefit: the performance of the contract.

Furthermore, because the defendant causes the plaintiff to act for the defendant's benefit in the forum State, the plaintiff should be deemed as acting as the agent of defendant rather than as acting unilaterally. As such, the plaintiff's action in the forum State should be attributable to the defendant. *See generally* 4 C. Wright & A. Miller, *Federal Practice & Procedure* § 1069 (1969) (activities within the forum State of agents of nonresident corporation may suffice to establish jurisdiction).

---

**5.** I am not as confident as the majority that the Supreme Court has "abandoned" federalism as a concern in determining personal jurisdiction. *See ante* at 1198–99 (citing *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982)). The minimum contacts issue was a collateral concern in the *Insurance Corp. of Ireland* case, and, as the majority concedes, the Court emphasized that its holding did not alter the minimum contacts requirement. *See ante* at 1198–99.

Moreover, the Court could not abandon federalism concerns without overruling *International Shoe.* That case defined due process to include not just fairness in terms of the convenience to the defendant, but also "the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." *International Shoe,* 326 U.S. at 319, 66 S.Ct. at 160. The unfairness proscribed by *International Shoe* is not simply the cost of defending a lawsuit in a distant forum, but "the unfairness, as it is conceived, of being compelled to defend ... [oneself] in a court of a State which ... [one] has no relevant connection." Currie, *The*

*Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois,* 1963 U.Ill.L.F. 533, 534. That is, the unfairness at issue is that of being subject to the coercive power of a foreign State, and to be hauled before its courts without any prior connection with its laws, politics, or economy. Indeed, if State sovereignty were not a fundamental concern, then personal jurisdiction would vary with the proximity of the forum State to the defendant, and cases involving federal question jurisdiction would not escape minimum contacts scrutiny. *Currie, supra,* 1963 U.Ill.L.F. at 534; *cf.* Redish, *Due Process, Federalism, and Personal Jurisdiction: A Theoretical Evaluation,* 75 Nw.U.L.Rev. 1112 (1980) (arguing that federalism is a key component in the jurisprudence of *International Shoe,* but concluding that federalism should not be a part of due process analysis).

In short, the abandonment of federalism would be an abandonment of *International Shoe.* I do not believe that the Supreme Court intended to overrule forty years of jurisprudence in a footnote in a case that was only collaterally concerned with the minimum contacts issue.

When the causal connection between the defendant's out-of-State activities and the plaintiff's activities within the forum State is too attenuated, the in-State activities will be considered as unilateral and as not giving rise to personal jurisdiction. *Cf.* Comment, *Constitutional Limitations on State Long Arm Jurisdiction,* 49 U.Chi.L. Rev. 156, 164–68 (1982) (identifying causation as a key requirement of due process). Thus, in *World-Wide Volkswagen,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490, the New York defendant caused the Oklahoma car accident in the sense that it sold the car to the plaintiff-driver. Addressing the causality issue under the rubric of "foreseeability," the Court held that the relationship between the out-of-State acts and the in-State events was so attenuated that the out-of-State defendant could not have "reasonably anticipate[d] being haled into [Oklahoma] court." *Id.* at 297, 100 S.Ct. at 567.

In the case at bar, the causal connection between the out-of-State and in-State acts is not similarly attenuated. Unlike *World-Wide Volkswagen,* the out-of-State act here—the contract—is the direct cause of the in-State activity—contract performance. Furthermore, when a South Carolina defendant contracts with a Wisconsin merchant and when it is undisputed that both parties contemplate substantial performance in Wisconsin, the South Carolina defendant can reasonably anticipate being haled into Wisconsin court for breaching that same contract.

Nothing in the policies underlying *International Shoe* militates against granting personal jurisdiction on the basis of a contract. As for federalism concerns, Wisconsin has a compelling interest in offering its residents legal avenues for enforcing contracts with nonresidents. It is true that

the forum State in *World-Wide Volkswagen* had an equally compelling interest in policing against unsafe automobiles.[6] What distinguishes the two cases is the unfairness of a State extending its sovereign power to pursue such compelling interests to nonresidents who have eschewed all connection with that State. In *World-Wide Volkswagen,* the Court found it unfair to allow Oklahoma to exert jurisdiction over a defendant who sought to confine its operations to New York and the tristate area:

> The Due Process Clause, by ensuring the "orderly administration of the laws," *International Shoe Co. v. Washington,* 326 U.S. at 319 [66 S.Ct. at 160], gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.

*World-Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567. Here, the defendant deliberately extended its operation to Wisconsin by contracting with a Wisconsin merchant.

As for the "traditional notions of fair play and substantial justice" that underlie minimum contacts analysis, *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158, it is difficult to see how a sophisticated merchant who enters interstate commerce by contracting with an out-of-State merchant can be the victim of fundamental unfairness by virtue of the court's decision to grant jurisdiction solely on the basis of that contract. Such a rule would merely force the defendant-merchant to internalize one of the costs of doing business across State lines: defending a lawsuit in the home State of the other party to the contract.[7] This is not a case in which gross inequities

---

**6.** That the plaintiffs in *World-Wide Volkswagen* were not residents of Oklahoma is immaterial for due process analysis because distinctions between residents and nonresidents in this context would be both arbitrary and violative of the privileges and immunities clause. Brilmayer, *How Contacts Count: Due Process Limitations on State Court Jurisdiction,* 1980 Sup.Ct.Rev. 77, 86–87.

**7.** To an extent, this argument cuts both ways. Absent any transaction costs, it would be just as fair, if we can define "fair" to mean "efficient," to force the plaintiff, not the defendant, to internalize such costs. *See* Coase, *The Problem of Social Cost,* 3 J.Law & Econ. 1 (1960). In addition, while it is often stated that modern economic developments make it easier both to engage in interstate commerce and to defend suits

in bargaining power and resources, such as where the defendant is a consumer who places an order with a large mail-order house based in another State, should give us pause before finding jurisdiction to be in accord with fundamental fairness. *See* Currie, *supra,* 1963 U.Ill.L.F. at 574–77 (unfair to permit mail-order house to bring suit on small claims in its home State); *see also supra* note 4.

Finally, although I agree that the minimum contacts analysis must be "fact intensive," *see ante* at 1199, the Supreme Court has also indicated that the due process clause requires that our decisions "give a degree of predictability to the legal system," *see World-Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567. I believe that overruling *Lakeside* would serve this latter policy. At present, this court follows what one commentator characterizes as the "contract plus" doctrine. Note, *Long-Arm Jurisdiction in Commercial Litigation: When is a Contract a Contract?,* 61 B.U. L.Rev. 375, 388–89 (1981). A contract is not itself sufficient to confer jurisdiction, but when some other factor is added—such as a brief visit to the forum State to complete the deal, *see supra* note 2—the requisite threshold level of contacts is reached. The problem is that these additional items have little real significance when compared to the often large contracts involved. One suspects that despite its announced rule, this court considers contracts to be quite a significant contact and employs the various "plus" factors as the make-weight necessary to reach the result of finding jurisdiction. But where such make-weight factors are unavailable, the court is constrained to follow *Lakeside. E.g., Jadair, Inc. v. Walt Keeler Co., Inc.,* 679 F.2d 131 (7th Cir.), *cert. denied,* 459 U.S. 944, 103 S.Ct. 258, 74 L.Ed.2d 201 (1982). This lends a certain

capriciousness to the law. Covert tools are bad tools,[8] and to the extent we can clarify the underlying reasons for our decisions, we make the law more predictable.

Accordingly, I would overrule *Lakeside.* I would hold that where, in the absence of gross inequities in bargaining power, two merchants contract for the sale of goods or services, the forum State may exercise jurisdiction over the defendant-merchant, if (1) the plaintiff-merchant's cause of action is based on the contract, (2) plaintiff's substantial performance of the contract in the forum State is reasonably contemplated by the defendant at the time of the contract, and (3) the contract is substantially performed in the forum State by the plaintiff. I therefore concur with the judgment that the district court erred in dismissing the instant action for want of personal jurisdiction and that the cause should be remanded for further proceedings.

---

in foreign States, *e.g., McGee v. International Life Ins. Co.,* 355 U.S. 220, 222–23, 78 S.Ct. 199, 200–01, 2 L.Ed.2d 223 (1957), these same developments make it equally easy for the *plaintiff* to sue the defendant in the defendant's home forum. Brilmayer, *supra,* 1980 Sup.Ct.Rev. at 111.

Nevertheless, jurisdictional doctrine requires us to focus on the fairness to the defendant. If it is equally fair to place the burden on the

defendant or the plaintiff, then we must place the burden on the defendant. For, having concluded that fundamental fairness is indifferent as to which party bears the cost, we can hardly conclude that it is fundamentally unfair to place the burden on the defendant.

8. *See* Llewellyn, *Book Review,* 52 Harv.L.Rev. 700, 703 (1939).