FRONING & DEPPE, INC., Plaintiff,

v.

CONTINENTAL ILLINOIS NATIONAL BANK & TRUST COMPANY, Defendant,

v.

VALLEY NATIONAL BANK, Third Party Defendant and Third Party Plaintiff-Appellant,

v.

SOUTH STORY BANK & TRUST, Third Party Defendant-Appellee.

No. 82–1687.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 10, 1982.

Decided Dec. 9, 1982.

**290**

Steven H. Hoeft, McDermott, Will & Emery, Chicago, Ill., for third party defendant and third party plaintiff-appellant.

Michael Childress, Lev & Sneckenberg, Chicago, Ill., for third party defendant-appellee.

Before WOOD and ESCHBACH, Circuit Judges, and BARTELS, Senior District Judge.*

* The Honorable John R. Bartels, Senior District Judge of the Eastern District of New York, is sitting by designation.

HARLINGTON WOOD, Jr., Circuit Judge.

This is an appeal from a district court order granting the third party defendant-appellee's motion to dismiss the third party complaint against it for lack of personal jurisdiction. Because we conclude that the district court properly applied the "minimum contacts" test of *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), and its progeny in dismissing the third party complaint, we affirm.

I.

This case arises from the allegedly forged and unauthorized endorsement of six checks, totaling $229,077.28. The payee designated on the checks was Froning and Deppe, an Iowa corporation with its principal place of business in Iowa, and the checks were drawn upon an account at Continental Illinois Bank and Trust Co. (Continental) in Chicago, Illinois. The alleged forger cashed the checks at South Story Bank & Trust (South Story) in Slater, Iowa. South Story then remitted the checks for collection and credit to its clearing house bank, Valley National Bank (Valley National) in Des Moines, Iowa. Subsequently, Valley National remitted the checks for collection and credit to Continental in Illinois.

The payee Froning and Deppe initially brought suit against South Story and Continental in Iowa state court. Although Continental was dismissed from that case pursuant to the national bank exclusive venue provision of 12 U.S.C. § 94, South Story is still a party to that suit. Froning & Deppe, as required by 12 U.S.C. § 94, brought suit against Continental in federal district court in Illinois. Continental thereafter impleaded Valley National, alleging breach of warranty of good title under Illinois law, and in turn Valley National named South Story as a third party defendant, alleging breach of warranty of good title and conversion under Iowa law. South Story, served at its Iowa

offices pursuant to the Illinois long-arm statute, entered a limited appearance to contest the validity of personal jurisdiction and moved to dismiss Valley National's complaint pursuant to Fed.R.Civ.P. 12(b)(3).

In ruling on South Story's motion, the district court relied upon a series of undisputed facts. First, the court noted, South Story maintains only two offices, both in Iowa, and the bank does not have any agents or offices in Illinois. Additionally, none of South Story's officers have traveled into Illinois for the purpose of transacting business within the last five years. Although South Story does maintain a bank account at Continental for limited tax and bond purposes, the court found, and Valley National concedes, that the existence of this account is irrelevant to the jurisdictional inquiry here. Finally, the court found, all of South Story's activities in connection with the transactions at issue here took place in Iowa; South Story had no contact with Continental, instead dealing solely with Valley National, another Iowa bank. The district court did not consider whether these facts supported exercise of jurisdiction under the Illinois Long Arm Statute, for it found these same facts insufficient to support the finding required under *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), that South Story possessed "minimum contacts" with Illinois sufficient to avoid offense to traditional notions of fair play and substantial justice if jurisdiction over it were maintained.

In concluding that the assertion of personal jurisdiction over South Story would have offended due process, the court confronted two arguments put forth by Valley National: first, that, since South Story knew that the final destination of the checks was Continental in Illinois, it should have reasonably anticipated being haled into court there, thus satisfying the *International Shoe* test as elaborated in *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); and second, that since any possible claim by South Story against Continental would have had to have been filed in

Illinois and would have relied upon Illinois law, South Story invoked the benefits and protections of Illinois law, thus satisfying the gloss on *International Shoe* added by *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). The district court concluded that neither argument was persuasive, and dismissed the complaint. Valley National appealed.

### II.

#### A. Foreseeability

As to Valley National's first argument based on the "foreseeability" of the checks' arrival in Illinois, the district court noted that similar reasoning was flatly rejected by the Supreme Court in *World-Wide Volkswagen,* where a plaintiff sought jurisdiction over a non-resident defendant automobile dealer in connection with a claim for injuries sustained in the forum state, on the theory that the non-resident could have foreseen that the automobile, transitory by its nature, would have caused injury there. The district court noted the Court's holding that

> the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.

*World-Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567. The district court concluded that, in view of the enormous volume of interstate check processing which every bank performs on a daily basis, it would be unreasonable to charge each bank with the knowledge that it may at any time be called to answer in the courts of any of the fifty states from which a check cashed by one of its customers originated.

We agree with the district court that the fundamentals of substantial justice as articulated in *International Shoe* and *World-Wide Volkswagen* would be offended by basing jurisdiction over a non-resident bank upon the bank's mere acceptance of a

check which indicates on its face its origin in the forum state. Here, as in *World-Wide Volkswagen,* the record contained no evidence that the defendant conducted sales or service in the forum state, solicited business through salespersons or advertising in the forum state, or sought to serve the forum state market indirectly. *World-Wide Volkswagen,* 444 U.S. at 295, 100 S.Ct. at 566. The Court in *World-Wide Volkswagen* denied the plaintiff's attempt to base jurisdiction on a single incident of presence of the defendant's product in the forum state, *id.* at 295, 100 S.Ct. at 566, likewise, here, there is no record evidence that South Story processed checks drawn on Continental accounts on any other occasion. Moreover, the *World-Wide Volkswagen* Court underscored the crucial role that the *International Shoe* doctrine plays in protecting defendants from the burden of litigating in inconvenient forums, and in preventing states from reaching beyond their limits· as co-equal sovereigns. *Id.* at 293, 100 S.Ct. at 565. We fear that maintenance of jurisdiction over South Story here would contravene these cautionary and salutary policies.

Our conclusion finds support in an analogous case, *Leney v. Plum Grove Bank,* 670 F.2d 878 (10th Cir.1982). There, the plaintiff sought to establish jurisdiction over a non-resident bank whose only arguable contacts with the forum state were the sending of a letter of credit to plaintiff's attorney in the state and the bank's knowledge that the letter was to be utilized in connection with a real estate transaction in the forum state. *Leney,* 670 F.2d at 879, 880. Despite the more substantial and deliberate contacts with the forum state not present here (i.e., an active issuing of credit directly rather than mere acceptance of a group of checks to be processed first through another in-state bank, and the bank's knowledge that the negotiable instrument was to have an impact on transactions in the forum state), the *Leney* court found that the maintenance of jurisdiction over the non-resident bank would not comport with the due process standard enunciated in *International Shoe.* Like the district court here, the *Leney* court reasoned, "If we were to hold

that jurisdiction is proper . . . on the facts of the instant case we would have to subject any bank that issues a letter of credit to suit in any state in which the bank could expect the credit to be used . . . ." *Leney,* 670 F.2d at 881.

The cases cited by Valley National on appeal to support its foreseeability argument are inapposite, for each one involved systematic and deliberate attempts by the defendant to penetrate the forum state's market for goods and services, rather than the routine acceptance and remittal of commercial instruments incidentally bound for the forum state. In *Biltmoor Moving and Storage Co. v. Shell Oil Co.,* 606 F.2d 202 (7th Cir.1979), for example, the non-resident defendant moving contractor concluded a contract with a corporation doing business in Illinois which involved extensive, eight-month cooperative performance of both parties on the Illinois site. *Biltmoor,* 606 F.2d at 207. In *Taubler v. Giraud,* 655 ·F.2d 991 (9th Cir.1981), the non-resident defendant "deliberately targeted" the forum state's wine market with a barrage of sales visits, sample shipments, and written and electronic communications, ultimately concluding a contract in the forum state and paying duties on merchandise exported thereto. *Taubler,* 655 F.2d at 994. Similarly, in *Honeywell v. Metz Apparatwerke,* 509 F.2d 1137, 1144 (7th Cir.1975), the non-resident defendant reached the forum state market through an extensive marketing program designed to blanket numerous states with its product. *Honeywell,* 509 F.2d at 1144. And in *Plant Food Co-Op v. Wolfkill Feed and Fertilizer,* 633 F.2d 155 (9th Cir.1980), the court found that the non-resident defendant sent a shipment of goods into the forum state as part of its business of serving the product markets of various states. *Plant Food Co-Op,* 633 F.2d at 159.

In contrast, here there is no evidence that South Story engaged in any conscious or systematic attempt to tap potential Illinois markets for its financial services; rather, it was a small Iowa bank which did not perform any direct interstate remittals, relying instead for this purpose on its Iowa clear-

inghouse bank, Valley National. We agree with the district court that there was no basis upon which the ultimate destination of the checks at issue could have reasonably been expected to notify South Story of its vulnerability to jurisdiction in Illinois.

### B. *Invocation of the Benefits and Protections of Illinois Law*

■ Valley National's second main argument is that South Story invoked the benefits and protections of Illinois law in a manner sufficient to justify personal jurisdiction, since any claim against Continental based on the presentment of the checks would have had to have been founded on Illinois law. In rejecting this argument, the district court reasoned that the existence of such a hypothetical possibility of an Illinois lawsuit against plaintiff initiated by defendant was irrelevant to the defendant's vulnerability to third party plaintiff's Illinois lawsuit. A contrary holding, the court noted, would potentially subject anyone who transacted business with a large national corporation to suit in any state in which the corporation did business, irrespective of the individual's contacts with that state, a result plainly at odds with *International Shoe* and its progeny. In support of its conclusion, the district court cited our decision in *Lakeside Bridge & Steel Co. v. Mountain State Construction Co., Inc.,* 597 F.2d 596, 604 (7th Cir.1979), *cert. denied,* 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980), which held that the mere existence of a contract creating hypothetical amenability of a forum state plaintiff to a forum state suit initiated by a non-resident defendant does not logically compel the reciprocal maintenance of jurisdiction over a non-resident defendant in a suit initiated by the forum state plaintiff. In the first situation, the *Lakeside* court reasoned, the forum state corporation would be amenable to suit in the forum state, or any other state in which it did business, *regardless* of whether any contractual obligation was performed in that state; for due process purposes, therefore, a sufficient connection by the defendant with the forum state, apart from the possibility of a lawsuit based upon the underlying transaction, must be demon-

strated. The logical result of Valley National's position would be to hold South Story amenable to suit in any state in which Continental did business, since the benefits and protections of that state's courts and law would be available to South Story in a suit founded on a check transaction. Such a result, the district court rightly found, clearly does not satisfy due process considerations.

The cases cited by Valley National in which the *International Shoe* standard was held satisfied by the non-resident defendant's invocation of forum state protection are readily distinguishable, for each involved extensive contacts with the forum state beyond a mere hypothetical possibility of the initiation of a lawsuit by the defendant in the forum state's courts. In *Hutter Northern Trust v. Door County Chamber of Commerce,* 403 F.2d 481, 484 (7th Cir.1968), for example, the non-resident defendant's entire *raison d' etre* was the active solicitation of business through advertising, attendance at trade shows and maintenance of a permanent display center in the forum state, activities which invoked the protection of numerous state laws and regulations. *Hutter,* 403 F.2d at 484, 485. Likewise, in *O'Hare International Bank v. Hampton,* 437 F.2d 1173, 1177 (7th Cir. 1971), jurisdiction was based on the existence of a lease contract between plaintiff and defendant which was negotiated and executed in Illinois, and which contemplated that regular payments would be sent to Illinois and that the contract would be construed in accordance with Illinois law. Here, there is no such evidence of South Story's conscious enjoyment of or attempt to enjoy the benefits and protections of Illinois law. For this reason we conclude that the district court was correct in refusing to find jurisdiction on the basis of the "benefits and protections" test enunciated in *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).

### C. *The Balance of State and Federal Interests and Policies*

■ The due process inquiry under *International Shoe* and its progeny is usually not

exhausted, however, by an assessment of the burden placed upon the non-resident defendant. Other relevant factors to be considered include the forum state's interest in adjudication of the entire dispute, the plaintiff's and interstate judicial system's interest in expedited relief, and the interest of the states in advancing underlying substantive policies. *World-Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564; *Kulko v. California Superior Court,* 436 U.S. 84, 92, 93, 98, 98 S.Ct. 1690, 1696, 1697, 1700, 56 L.Ed.2d 132 (1978); *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). All of these considerations further support the district court's decision to dismiss the complaint.

■ First, it is undisputed that all of the activities relevant to South Story's alleged liability took place in Iowa, and that its alleged liability is premised upon the Iowa law of title warranty and conversion. It is therefore difficult to imagine any special interest that Illinois could have in the resolution of a dispute between two Iowa banks about facts and law alien to Illinois. *Cf. McGee,* 355 U.S. at 223, 78 S.Ct. at 201. Second, while Valley National no doubt has an interest in expedited relief, it has not demonstrated that pursuit of its complaint in the state courts of Iowa, which are more skilled in interpreting Iowa law, would be less expedient than the continued maintenance of its claim in this instant, complicated multi-party litigation. Indeed, Froning & Deppe is currently prosecuting its claim against South Story in the Iowa courts based on the very same underlying facts.

Most importantly, however, as the district court found, maintenance of personal jurisdiction over South Story in this case would positively *hinder* the underlying policies of the several states which favor the free flow of commerce and of interstate banking transactions in particular. Upholding jurisdiction here on either Valley National's "foreseeability" theory or its "benefit and protection" theory would have the result of subjecting a bank to suit in any state from which a check cashed by one of its customers might originate, and would more broadly potentially subject anyone who did business with a large national corporation to suit in any state in which the corporation did business, irrespective of the individual's contacts with that state. Plainly, such a result would wreak havoc upon the orderly conduct of interstate business.

Valley National attempts to understate the chilling effect of a ruling in its favor. First, it argues, the instant case does not involve the "simple act of accepting a check" but rather "special circumstances": the large monetary sum involved, South Story's hypothetical access to Illinois courts to resolve a dispute arising from the presentment of the check, and South Story's triggering of the instant dispute by failing to verify the allegedly forged endorsements. However, this court has plainly held that "the dollar amount of the transaction can hardly be a principled basis for distinguishing between one case and another, let alone for ignoring the requirement ... that the defendant, not the plaintiff, conduct activities in the forum state." *Lakeside Bridge,* 597 F.2d at 604. In addition, as demonstrated in II. B. above, South Story's hypothetical access to the Illinois courts in a suit against the Illinois plaintiff does not distinguish the instant case; this condition would be present in nearly all interstate transactions. Valley National's last mentioned "special circumstance"—i.e., that South Story's jurisdictional acts triggered the underlying litigation—is similarly tautological and would be present in nearly every case in which jurisdiction is sought to be established.

Valley National also attempts to downplay the economically chilling impact of a decision in its favor by noting that, under its preferred "foreseeability" test, a check-cashing bank such as South Story could not sue a payor bank such as Continental in the former's home state, in view of the payor bank's lack of knowledge as to where its checks will be deposited. But this does not mitigate the result that holding South Story to answer in Illinois would chill the return movement of checks from an accepting

bank to a payor bank, thus severely hampering what is now the routine necessity of payees' negotiating of out-of-state checks. Such a result cannot be countenanced.

Even assuming *arguendo,* however, that the countervailing state and federal policies favoring expeditious adjudication and underlying substantive goals worked in favor of Valley National, we would still be unable to find valid jurisdiction over South Story. Where, as here, there is such an egregious absence of contacts, ties or relations between the defendant and the forum state, "the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the state of its power to render a valid judgment" despite a balance of state and federal interests otherwise favoring the plaintiff. *World-Wide Volkswagen,* 444 U.S. at 294, 100 S.Ct. at 566.

### D. *The Illinois Long-Arm Statute*

Although the district court found it unnecessary to determine whether the Illinois long-arm statute[1] or its common law "doing business" rule purported to reach South Story in view of its holding that such a pretension would run afoul of *International Shoe,* it is likely that, had it addressed this question, it would have failed to find South Story amenable to jurisdiction under either state rationale. In *Cook Associates, Inc. v. Lexington United Corporation,* 87 Ill.2d 190, 57 Ill.Dec. 730, 429 N.E.2d 847 (1981), the Illinois Supreme Court failed to find that a non-resident defendant corporation satisfied either the statutory test requiring the "transaction of any business" within the state or the common law test of "doing business" in the state even where, unlike here, the non-resident corporation explicitly requested services from the Illinois corporation and actively solicited business and accepted orders in Illinois on several occasions. *Cook,* 429 N.E.2d at 849. In view of South Story's total lack of physical contacts with Illinois or its direct request of services from Continental, it is doubtful that the Illinois courts would have purported to

reach South Story even had they been permitted to do so under *International Shoe.*

### CONCLUSION

Despite strenuous argument, appellant Valley National has failed to identify "minimum contacts" by appellee South Story with Illinois sufficient to warrant a finding that assertion of jurisdiction would satisfy due process requirements. Especially in view of the plainly illogical and economically disastrous effects that would flow from a finding of jurisdiction in this case, the district court's dismissal of Valley National's third party complaint is affirmed.

AFFIRMED.

ESCHBACH, Circuit Judge, concurring.

While I agree with the majority that the dismissal of the third party complaint for lack of personal jurisdiction should be affirmed, I write separately because I would affirm on statutory rather than on constitutional grounds.

The Illinois Supreme Court has recently indicated that its long arm statute will not necessarily be interpreted to reach the outer limits of due process. *Cook Associates, Inc. v. Lexington United Corp.,* 87 Ill.2d 190, 197–98, 57 Ill.Dec. 730, 733, 429 N.E.2d 847, 850 (1981); *Green v. Advance Ross Electronics Corp.,* 86 Ill.2d 431, 436, 56 Ill. Dec. 657, 660, 427 N.E.2d 1203, 1206 (1981). The court, however, has not yet defined the precise contours of the statute, nor has it disclosed in what specific ways it differs from due process limitations.

Faced with well-defined due process doctrines on one hand and as yet undeveloped statutory interpretation on the other, the district court and the majority understandably chose to apply familiar constitutional analysis rather than try to anticipate what gloss the Illinois courts will eventually add to the statute. As attractive as this choice may seem in the circumstances, I do not believe we should reach out to decide a constitutional issue when we can affirm on the basis of the long arm statute.

1. Ill.Rev.Stat.1977, ch. 110, ¶ 17(1)(a).

We know that the Illinois long arm statute "should have a fixed meaning without regard to changing concepts of due process, except, of course, that an interpretation which renders the statute unconstitutional should be avoided, if possible." *Id.* Since upholding personal jurisdiction over South Story would create the serious constitutional problems so ably discussed by the district court and the majority, I believe the Illinois courts would conclude that South Story is not amenable to service under the Illinois long arm statute. On that statutory basis, I would affirm.