**Jean Dufort BAPTICHON, Plaintiff,**

v.

**NEVADA STATE BANK,
et al., Defendants.**

**No. 01–CV–2729 NGG.**

United States District Court,
E.D. New York.

Feb. 9, 2004.

Jean Dufort Baptichon, Richmond, NY, pro se.

## ORDER

GARAUFIS, District Judge.

On January 15, 2004 Magistrate Judge Roanne L. Mann issued a comprehensive, well-written, and well-reasoned Report and Recommendation ("R & R") recommending that the plaintiff's motion to amend his complaint be denied and that defendant Nevada State Bank's motion to dismiss be granted. The reason for these recommendations was that this court has no personal jurisdiction over defendant Nevada State Bank.

There have been no objections to the R & R. Therefore, the court reviews the R & R for clear error. *Nelson v. Smith,* 618 F.Supp. 1186 (S.D.N.Y.1985). After careful review, the court finds no clear error in Magistrate Judge Mann's R & R and therefore adopts the R & R for the reasons stated therein. The plaintiff's motion to amend his complaint is hereby DENIED, and the defendant Nevada State Bank's motion to dismiss is hereby GRANTED.

SO ORDERED.

1. During earlier stages of this litigation, plaintiff was enrolled in law school. *See, e.g.,* Letter to the Court dated December 10, 2002, from *Pro Se* Plaintiff. The record does not reflect whether plaintiff is now admitted to

## REPORT AND RECOMMENDATION

MANN, United States Magistrate Judge.

On May 1, 2001, plaintiff Jean Dufort Baptichon ("plaintiff"), proceeding *pro se,* commenced this securities fraud action against various defendants, seeking damages resulting from his fraudulently induced investment of $10,000 in a promotion operated out of California. As discovery was ending, plaintiff amended his complaint for a second time and added Nevada State Bank ("defendant" or "NSB") as a defendant. Plaintiff now requests additional opportunities to amend. Concurrently, NSB moves to dismiss plaintiff's claims, based on lack of personal jurisdiction, improper venue, failure to state a claim upon which relief can be granted, and expiration of the applicable statutes of limitations. On July 17, 2003, the Honorable Nicholas G. Garaufis referred both sets of motions to the undersigned magistrate judge for a Report and Recommendation.

For the reasons that follow, this Court recommends that NSB's motion to dismiss be granted, and that plaintiff's motion to further amend be denied, based on lack of personal jurisdiction.

## PLAINTIFF'S VARIOUS PLEADINGS[1]

Plaintiff filed his original complaint on May 2, 2001, charging Ronald Mulhall, eight other individuals, and Yes Entertainment Network Inc. ("Yes"), with violating Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5. *See* Complaint ("Compl.") [# 1].[2] Plaintiff alleges

practice law. The Court has construed his pleadings liberally and has given him the benefit due a *pro se* party.

2. Plaintiff has confused the record by using the same label for different versions of his

in that pleading that in August 1999, he was induced to invest in Yes as part of a fundraising effort to launch an initial public offering. *See* Compl. [# 1] at ¶¶ 4, 6, and Exhibits ("PX") 1–2 thereto. As a result of the original defendants' misrepresentations about the investment, plaintiff, on August 11, 1999, sent them a check for $10,000 in exchange for a certificate representing four "units." *See* Compl. [# 1] at ¶¶ 7–10 and PX 4. Unbeknownst to plaintiff, his investment was worthless and, after cashing plaintiff's check, the original defendants failed to respond to any of plaintiff's messages. *See* Compl. [# 1] at ¶¶ 8–10.

On February 15, 2002, plaintiff filed his initial "Amended Complaint" [# 35], against the same defendants. This pleading repeated the prior violations, but added particulars concerning the misrepresentations made by the original defendants. *See* Amended Complaint [# 35] at ¶¶ 8–10, 15.

On August 30, 2002, the Pro Se Clerk's Office received from plaintiff a different document entitled "Amended Complaint" [# 61], which adds NSB as a defendant, and drops several of the original defendants.[3] The allegations against the original defendants remain substantially the same. The allegations against NSB are contained in paragraph 13 of that document, which complains that on or about August 16, 1999, NSB "aided and assisted the defendants in defrauding the plaintiff of his money . by depositing [plaintiff's check] [into the] 'Yes Entertainment Network' account, as opposed to 'Yes Entertainment Inc.,['] the payee named on the plaintiff's check...." Amended Complaint ("Am.Compl.") [# 61] at ¶ 13. Plaintiff further alleges that, "but for the Nevada State Bank's willful intent or negligence in accepting to deposit and cash the plaintiff check on the account of an entity that was not named as payee on the check, the ·defendants would not have defrauded the plaintiff of his $10,000.00 invested with defendants on August 11, 1999." *Id.* The pleading again alleges that "the defendants" violated Section 10(b) and Rule 10b–5. Am. Compl. [# 61] at ¶¶ 17–18.

On November 18, 2002, plaintiff submitted a document entitled "Motion to Amend Amended Complaint as to Defendant Nevada State Bank" ("Mot.Am.") [# 54]. Paragraph 4 of the motion papers describes NSB's involvement in the misconduct alleged by plaintiff, and avers that NSB, as the depositary bank, "accepted a forged endorsement" on plaintiff's $10,000 check and "willfully or negligently" "disregard[ed] the restriction on the check," by depositing the check into the account of "Yes Entertainment Network Inc." and presenting the check to plaintiff's bank for payment, despite the fact that the check was made payable to "Yes Entertainment Inc." Mot. Am. [# 54] at ¶ 4.[4] Attached to

---

amended pleadings. For example, there appear to be two documents entitled "Amended Complaint"—one dated February 15, 2002, and the other dated August 30, 2002. For ease of reference, and to minimize the resulting confusion, this opinion will, where applicable, include in brackets the sequential number assigned to the document on the court file copy and on the docket sheet.

**3.** By endorsed order dated September 17, 2002, this Court ruled that plaintiff's latest pleading would be accepted for filing, without prejudice to the defenses or objections of any party. That pleading was not docketed until February 27, 2003.

Although that "Amended Complaint" is in fact plaintiff's *second* amended complaint, this Court will, like the parties, refer to it as the "Amended Complaint," but will add the document number for clarification.

**4.** That paragraph reads in full as follows:

On or about August 16, 1999, the Defendant Nevada State Bank accepted a forged

plaintiff's motion is a document entitled "Amended Complaint as to Defendant Nevada State Bank" ("Am.Compl.NSB") [# 54]. In addition to adding language concerning Rule 15 of the Federal Rules of Civil Procedure and supplemental jurisdiction (Am. Compl. NSB [# 54] at ¶¶ 2, 4), that pleading includes a new paragraph that alleges that plaintiff's payment "in violation of a forged restrictive endorsement" gives rise to liability "based on money had and received or conversion...." *Id.* at ¶ 15.[5]

Plaintiff's Proposed Amended Complaint as to NSB [# 54]—which in fact constitutes his *fourth* pleading and *third* amended complaint—is one of the pleadings that is the subject of the pending motions referred by Judge Garaufis. Although plaintiff's characterizations of his claims vary somewhat from submission to submission, he has now unequivocally abandoned any theory that NSB aided and abetted a federal securities law violation[6]; rather, plaintiff appears to complain of "a violation of a forged restrictive endorsement based on money had and received or conversion, couched in negligence." Letter to the Court dated November 18, 2002, from Jean Dufort Baptichon [# 49] at 2; *see id.* at 6 ("Plaintiff's claim against the Defendant is for money had and received or conversion and common law negligence ...."); *compare* "Brief Memorandum in Support of Plaintiff's Motion to Amend Second Amended Complaint as to Defendant Nevada State Bank" ("Pl. Mem. to Am.") [# 64] at 10 (stating that plaintiff seeks to assert, "in addition to the Security fraud violations, claims arising under the doctrine of money had and received, conversion, willful or negligent violation of common law and the UCC.").

At a premotion conference held on February 26, 2003, plaintiff disclosed that he

---

endorsement of the Plaintiff's $10,000 check, which was made payable to "Yes Entertainment Inc.," that the Defendant Yes Entertainment Network Inc., a Nevada corporation[,] presented "For Deposit Only" to the Defendant Nevada State Bank where Defendant "Yes Entertainment Network Inc.["] carried an account under the corporate name of "Yes Entertainment Network Inc." The Defendant Bank, in complete disregard of the restriction on the check, the name of the payee, willfully or negligently certified the endorsement on the check as the authenticated endorsement of the named payee by presenting the check as such to the Plaintiff's Bank for payment and Plaintiff's bank paid the funds to Defendant Nevada State Bank as the depository bank from the Plaintiff's account.

Mot. Am. [# 54] at ¶ 4.

5. That paragraph, which also refers to NSB's "breach of warranty to plaintiff's bank," reads as follows:

Plaintiff's action against defendant Nevada S[t]ate Bank as the depository bank is because the bank accepted plaintiff's check and paid out the proceeds in violation of a

forged restrictive endorsement, based on money had and received or conversion, where as here, the fraudulent endorsement, although forged, was nonetheless effective for the Nevada State Bank's purposes. Plaintiff's bank paid the funds from the plaintiff's account because defendant Nevada State Bank as the transferee or depositary has breached the duty imposed by a restrictive endorsement upon the defendant bank to pay the check only in accordance with the restriction. Here, defendant Nevada State Bank totally disregarded the restriction. Because of the disregard by the defendant Nevada State Bank and its breach of warranty to plaintiff's bank, the plaintiff suffered damages. Thus, the defendant Nevada State Bank had not only subjected itself to liability for any losses resulting from its actions, but also had passed up what might have been the best opportunity to prevent the fraud perpetrated by its co-defendants.

Am. Compl. NSB [# 54] at ¶ 15.

6. *See* Plaintiff's Memorandum in Opposition to Defendant Nevada State Bank's Motion to Dismiss Complaint ("Pl.Opp.Mem.") [# 68] at 16–17.

wished to amend his complaint further, and Judge Garaufis gave him until March 21, 2003, to submit additional materials. *See* Calendar Entry dated February 26, 2003. This resulted in the submission of a document dated May 15, 2003, mistakenly entitled "Plaintiff's Third Amended Complaint as to Defendant Nevada State Bank" ("Third Am. Compl.") [# 76].[7]

Plaintiff's proposed "Third Amended Complaint" omits the prior allegations as to the original defendants and, in describing the injuries flowing from NSB's acts, now complains of "economic damages and emotional distress." Third Am. Compl. [# 76] at ¶ 7. In addition to reiterating his theories of liability "based on money had and received or conversion," *id.*, plaintiff also claims that NSB violated "the Bank Secrecy Act," 12 U.S.C. § 1951 *et seq.*, and the "Money Laundering Control Act," 31 U.S.C. § 5311 *et seq.*, and he seeks civil and criminal penalties. Third Am. Compl. [# 76] at ¶¶ 8–16; *see id.* at ¶ 4.

### PROCEDURAL POSTURE

Liberally construed, plaintiff's various pleadings appear to allege the following theories of liability: money had and received, conversion, violation of the Uniform Commercial Code ("UCC"), aiding and abetting an act of fraud, and violations of the Bank Secrecy Act and Money Laundering Control Act. NSB moves to dismiss all claims and opposes plaintiff's motions to amend based on lack of personal jurisdic-

tion, improper venue, failure to state a claim upon which relief can be granted, and expiration of the applicable statutes of limitations.

For the purpose of the pending motions, the Court accepts as true the facts alleged in plaintiff's pleadings and related submissions. Specifically, in August 1999, plaintiff was contacted by the other defendants and fraudulently induced to invest in Yes. Plaintiff mailed a $10,000 check to Yes in exchange for a certificate representing four "units." Because of a "prior bad experience" with an investment scheme, plaintiff intentionally made the check out to "Yes Entertainment Inc.," rather than to "Yes Entertainment Network, Inc.," in order to "protect his investment."[8] Nonetheless, the check was endorsed in the name of "Yes Entertainment Network"[9] and NSB deposited it into the account of Yes Entertainment Network, Inc.; the check was forwarded through the normal federal banking channels until it finally reached plaintiff's New York account, which was debited accordingly.[10]

Plaintiff does not allege that NSB had any knowledge of the state in which plaintiff's bank account was located. Nor is there any evidence suggesting that NSB was at all involved in, or even had knowledge of, Yes's fraudulent acts. Plaintiff has proffered no facts to establish that NSB does or solicits business in New York or derives substantial revenue from New

---

7. That document is in fact plaintiff's fourth amended complaint, and his fifth pleading.

While an amended complaint typically supersedes earlier versions of that pleading, plaintiff's latest proposed pleading purports to incorporate three prior versions of the complaint. *See* Third Am. Compl. [# 76] at ¶ 3.

8. Pl. Mem. to Am. [# 64] at 6. Plaintiff's "theory is that [he] never intended to pay the party that received the check if that party

intended to defraud the plaintiff illegally...." Pl. Opp. Mem. [# 68] at 2; *see id.* at 2 n. 4.

9. *See* PX 4.

10. *See* Pl. Opp. Mem. [# 68] at 9; *see also* Memorandum of Law in Support of Nevada State Bank's Motion to Dismiss Plaintiff's Amended Complaint and/or Proposed Second Amended Complaint ("Def.Mem.") [# 70] at 4.

York or from interstate or international commerce.

For the reasons detailed below, this Court concludes that personal jurisdiction over NSB has not been established. Although NSB raises a variety of other arguments as to why the case should be dismissed, the undersigned respectfully suggests that the viability of plaintiff's claims should be left for decision by a court having jurisdiction over NSB.[11]

## DISCUSSION

When faced with a motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of showing that the court has personal jurisdiction over the defendant. *See Distefano v. Carozzi N. Am.*, 286 F.3d 81, 84 (2d Cir.2001); *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.1996). In order to defeat a jurisdictional challenge in the absence of discovery or an evidentiary hearing, the plaintiff must make a *prima facie* showing that includes an allegation of facts to support the assertion of jurisdiction over the defendant.[12] *See Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir.1998). In this connection, all pleadings and affidavits must be construed in the light most favorable to the plaintiff and all doubts resolved in his favor. *See Hoffritz for Cutlery, Inc. v. Amajac Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985).

In a diversity action, the Court looks to the law of the forum state to determine the existence of personal jurisdiction over a defendant. *See Metro. Life*, 84 F.3d at 567.[13] The Court then inquires whether the exercise of personal jurisdiction meets both the "minimum contacts" and "reasonableness" requirements of the due process clause, in that "the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction," and "it is reasonable under the circumstances of the particular case" to assert jurisdiction over the defendant. *Id.* at 567–68.

In his pleadings, plaintiff purports to rely on various provisions of New York's long-arm statute, N.Y. C.P.L.R. § 302(a)(1)-(3), as the basis for personal jurisdiction over NSB. *See* Pl. Mem. to Am. [# 64] at 10–12; *but see* Pl. Opp. Mem. [# 68] at 9–10 (relying exclusively on section 302(a)(3)). That state statute allows a court to exercise personal jurisdiction over a non-domiciliary who:

---

11. This Court is of course prepared to address the parties' remaining issues in the event a higher court determines that personal jurisdiction does in fact exist.

12. Whether to hold an evidentiary hearing on the question of personal jurisdiction is a matter entrusted to the discretion of the district court. *See Kowalski–Schmidt v. CLS Mortgage, Inc.*, 981 F.Supp. 105, 108 (E.D.N.Y. 1997) (citing *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981)). Because the facts bearing on personal jurisdiction are essentially undisputed in this case, and plaintiff's allegations do not rise to the level of a *prima facie* showing, an evidentiary hearing is unnecessary. *See Kowalski–Schmidt*, 981 F.Supp. at 108.

13. Plaintiff apparently confuses supplemental jurisdiction, which may be used to meet the requirements of subject matter jurisdiction (*see* 28 U.S.C. § 1367), with personal jurisdiction, which must be independently established as to each defendant. *See* Pl. Mem. to Am. [# 64] at 3. The existence of supplemental jurisdiction over plaintiff's claims thus does not aid plaintiff in demonstrating personal jurisdiction over NSB. *Cf. Security Nat'l Bank v. Ubex Corp.*, 404 F.Supp. 471, 472 (S.D.N.Y. 1975). Similarly, plaintiff erroneously suggests that this Court previously recognized the existence of personal jurisdiction over NSB. *See* Pl. Mem. to Am. [# 64] at 3. This Court has had no prior occasion to opine on the issue of personal jurisdiction over NSB.

(1) transacts any business within the state ...; or

(2) commits a tortious act within the state ...; or

(3) commits a tortious act without the state causing injury to person or property within the state ... if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from ... services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce....

N.Y. C.P.L.R. § 302 (McKinney 2003).[14] In order to make a *prima facie* showing of jurisdiction under the long-arm statute, the plaintiff must "aver facts that if credited, would suffice to establish all the requirements under one of § 302(a)'s subsections...." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 785 (2d Cir.1999). Plaintiff does not, and apparently cannot, do so.

**A.** *Jurisdiction Under Section 302(a)(1) (Transacting Business in New York)*

■ Under the first prong of section 302(a), "a defendant who transacts business in New York will be subject to personal jurisdiction in New York if the acts were purposeful and there is a substantial relationship between those acts and the plaintiff's claim." *Semi Conductor Materials, Inc. v. Citibank Int'l PLC,* 969 F.Supp. 243, 246 (S.D.N.Y.1997) (citing *PDK Labs, Inc. v. Friedlander,* 103 F.3d 1105, 1108 (2d Cir.1997)). Although a subject-heading in plaintiff's memorandum mentions the transaction of business as a basis for personal jurisdiction, plaintiff does not make any allegations suggesting what business NSB conducted in New York, or how such business was carried out. *See* Pl. Mem. to Am. [# 64] at 10–11.

In examining whether a defendant has "transacted business in New York, [the Court] must look at the totality of circumstances concerning the party's interactions with, and activities within, the state." *OrbitTravel.com Corp. v. SCS Solars,* No. 01 CIV. 7555(RCC), 2002 WL 31040411, at *3 (S.D.N.Y. Sept.12, 2002) (citing *Bank Brussels Lambert,* 171 F.3d at 787). In this case, the only allegation identifying the business that NSB transacted in New York is plaintiff's assertion that NSB sent plaintiff's check through normal federal banking channels to plaintiff's New York bank, where it was presented for payment. *See* Pl. Opp. Mem. [# 68] at 9; Def. Mem. [# 70] at 4. There is no suggestion that NSB (a Nevada banking corporation) maintains a New York office, is affiliated with a New York bank, or conducts any business in New York. Indeed, the uncontroverted affidavit of NSB's Senior Vice President and Community Banking Administrator establishes otherwise. *See* Affidavit of Cassi Eisinger dated April 7, 2003 ("Eisinger Aff.").[15]

---

**14.** The other ground on which personal jurisdiction may be asserted under the long-arm statute is where the party "owns, uses, or possesses any real property situated within the state." N.Y. C.P.L.R. § 302(a)(4) (McKinney 2003). Plaintiff does not appear to rely on this provision.

**15.** According to its sworn submission, NSB is a Nevada banking corporation that has never been registered or qualified to do business in New York, and has no branches, offices or telephone listing in New York. Eisinger Aff. at ¶¶ 2, 4. In fact, NSB's only branches and offices are in Nevada. *Id.* at ¶ 4. NSB does not own or lease any property, real or personal, in New York; has no agents or employees in New York; and has never conducted, solicited or engaged in business in New York, nor

Faced with an indistinguishable set of facts, and after reviewing analogous case-law and the policies underlying the exercise of personal jurisdiction, New York State Supreme Court Justice Stephen Crane concluded that a non-domiciliary bank's limited contact with New York did not support the assertion of personal jurisdiction under section 302(a)(1) or, for that matter, any provision of New York's long-arm statute. *See CitiBank, N.A. v. Inter-continental Bank*, 169 Misc.2d 342, 646 N.Y.S.2d 261 (N.Y.Sup.1996) (no personal jurisdiction where defendant bank had no office or place of business in New York and owned no real property in New York, and where sole connection with the state was transmission of check through normal banking channels to New York bank) (citing, *inter alia, Faravelli v. Bankers Trust Co.*, 85 A.D.2d 335, 447 N.Y.S.2d 962 (1st Dep't 1982) ("the mere mailing from [the defendant foreign bank] of a draft together with documents to a New York bank for payment does not constitute transacting business within New York. Nor does the fact that [the foreign bank] had correspondent banks in New York, in and of itself provide sufficient contacts for long-arm jurisdiction . . . .") (citations omitted)); *see also Symenow v. State Street Bank & Trust Co.*, 244 A.D.2d 880, 665 N.Y.S.2d 141, 142 (4th Dep't 1997) (reversing and dismissing for lack of personal jurisdiction under section 302(a)(1), where defendant bank's "only contact with New York was in wiring money from the allegedly fraudulent or forged checks to designated parties in New York."). Accordingly, section 302(a)(1) provides no basis for personal jurisdiction over NSB. *See Semi Conductor Materials*, 969 F.Supp. at 246 (English bank's acceptance of payment of plaintiff's confirmation fee under letter of credit in bank's New York bank account, and its

agreement to act as confirming bank under letter of credit in favor of company doing business in New York, did not support a finding that the bank "transacted business" in New York).

### B. *Jurisdiction Under Section 302(a)(2) (Tort Inside New York)*

There likewise is no personal jurisdiction under section 302(a)(2), which applies when the defendant has committed a tortious act within the state. *See Security Nat'l Bank v. Ubex Corp.*, 404 F.Supp. 471, 473–74 (S.D.N.Y.1975) (where bank in Texas failed to return or give prompt notice of dishonor of two promissory notes payable to New York corporation, alleged conversion occurred in Texas, not New York, within the meaning of New York's long-arm statute). It is a well-settled point of law that for personal jurisdiction to exist under this section, the defendant or its agents must be physically present in New York. *See Bank Brussels Lambert*, 171 F.3d at 790. There is no suggestion in plaintiff's pleadings or submissions that NSB has ever been physically present in New York State, and NSB's affidavit establishes that it has not. *See* Eisinger Aff. at ¶¶ 2–5.

### C. *Jurisdiction Under Section 302(a)(3) (Tort Outside New York Causing Injury Inside New York)*

Plaintiff's final (and primary) assertion of personal jurisdiction is under section 302(a)(3) of the long-arm statute, which involves the commission of a tortious act outside New York that causes injury within New York. For this section to apply, each of the following must be shown: (1) a tortious act committed outside New York; (2) resultant injury within New York; and (3) the defendant either (i) does or solicits business or engages in any other course of

derived substantial revenue from New York.    *Id.* at ¶¶ 3, 5.

conduct, or derives substantial revenue from activities, in New York, or (ii) expects or should expect that its tortious act will have consequences in New York, *and* derives substantial revenue from interstate or international commerce. N.Y. C.P.L.R. § 302(a)(3) (McKinney 2003).

Even assuming *arguendo* that plaintiff could establish the first element of section 302(a)(3),[16] he nevertheless has failed to establish the second and third elements of that section.

### 1. Second Element: Injury in New York

█ The determination of where the injury occurred is governed by the "situs-of-injury test," which requires the Court to identify the "original event which caused the injury." *Bank Brussels Lambert,* 171 F.3d at 791 (citation omitted). The situs of the injury is where the underlying, original event causing the injury took place, and is to be distinguished from both the initial tort and its final economic consequences. *See id.; Whitaker v. Am. Telecasting, Inc.,* 261 F.3d 196, 209 (2d Cir.2001).

█ Each of plaintiff's claims stems from NSB's allegedly wrongful conduct in depositing plaintiff's check into the account of Yes Entertainment Network, Inc., when the check was made out to "Yes Entertainment, Inc." The original event causing plaintiff's injury thus occurred in Nevada, where NSB deposited the check. Under no reasonable analysis can it be said that the injury occurred in New York, as required under section 302(a)(3).

Plaintiff would have the Court conclude that the presentation of the check to plaintiff's New York bank was the original event that caused his injury. *See* Pl. Opp. Mem. [# 68] at 9. However, plaintiff's check entered New York not because NSB

took any deliberate action in or even directed at New York; it was only by happenstance that plaintiff's bank was located in New York and that the check was returned there through normal banking channels. "The occurrence of financial consequences in New York due to the fortuitous location of plaintiff['s bank] in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York." *Whitaker,* 261 F.3d at 209 (internal citation and quotation marks omitted); *see also Mije Assocs. v. Halliburton Servs.,* 552 F.Supp. 418, 420 (S.D.N.Y.1982) (collecting cases where courts "declined to assert personal jurisdiction under CPLR 302(a)(3) over defendants alleged to have engaged in out-of-state tortious conduct causing injury 'in' New York solely because plaintiff (or plaintiff's bank account) was located in the state."); *Security Nat'l Bank,* 404 F.Supp. at 474–75; *Cooperstein v. Pan–Oceanic Marine, Inc.,* 124 A.D.2d 632, 507 N.Y.S.2d 893, 895 (2d Dep't 1986) (to satisfy section 302(a)(3), "there must be a more direct injury within the State than the indirect financial loss resulting from the fact that the injured person resides or is domiciled here.") (citation omitted).

Plaintiff alternatively claims that the original event occurred earlier, when the fraudulent misrepresentations were made by Yes in New York. *See* Pl. Opp. Mem. [# 68] at 10. However, the record contains no evidence or suggestion that NSB was at all involved in, or even had knowledge of, Yes's acts of fraudulent misrepresentation. Plaintiff admits as much by claiming that NSB aided and abetted the fraud only after the fraud "was already committed ... by Yes...." Pl. Opp. Mem. [# 68] at 16–17. Thus, plaintiff has not established resultant injury in New York.

---

**16.** An actionable tort is the first element. *See*    *Bank Brussels Lambert,* 171 F.3d at 785, 786.

## 2. Third Element: Interstate Nexus

Nor has plaintiff satisfied either of the two alternative prongs of the final element of section 302(a)(3): (i) doing business in New York or (ii) anticipating consequences in New York and deriving substantial revenue from interstate commerce.

■ *Subsection (i):* Plaintiff does not dispute NSB's sworn allegation that it does not engage in or solicit business in New York, derive substantial revenue from activities in New York, or engage in any course of conduct in New York, within the meaning of section 302(a)(3)(i). *See* Eisinger Aff. at ¶¶ 4–5; *Security Nat'l Bank*, 404 F.Supp. at 474–75 (granting motion to dismiss for lack of personal jurisdiction over Texas bank). The most that can be said is that NSB regularly sends checks through the federal banking system, some of which may find their way to New York banks for processing. *Cf.* Eisinger Aff. at ¶ 6. Plaintiff cites no cases and offers no specific data to support the proposition that such activities meet the requirements of section 302(a)(3)(i).

This Court is not persuaded that forwarding checks—of whose geographical origins the bank may be entirely unaware—through federally regulated channels, amounts to engaging in or soliciting business or engaging in conduct in New York, or deriving substantial revenue from activities in New York. There is no evidence or allegation that NSB is linked to New York through anything other than the fortuitous circumstances that some of the checks deposited at NSB may have been drawn on New York banks. When faced with a similar factual scenario in the *Citibank* case, the court declined to find that forwarding checks through normal banking channels to New York constitute "business activities in New York sufficient to satisfy the requirements of CPLR 302." *Citibank*, 646 N.Y.S.2d at 263. Indeed, the court suggested that the assertion of personal jurisdiction in those circumstances would offend due process notions of fair play and substantial justice. *See id.* at 262–63. This Court concurs in both respects.[17] *See also Micro Experts, Inc. v. Edison Techs., Inc.*, 122 Ohio App.3d 394, 701 N.E.2d 1033, 1037 (1997) ("Numerous decisions stand for the proposition that the mere forwarding of a check through the federal bank system by an otherwise foreign bank is an insufficient basis upon which to permit the exercise of personal jurisdiction.") (collecting cases); *Fleitas v. Union Chelsea Nat'l Bank*, 687 So.2d 911, 912 (Fla.Dist.Ct.App.1997) ("We agree that the actions of the New York bank in accepting the Florida check, initiating its collection through the normal Federal Reserve clearing house process, and paying the proceeds—all of which occurred in New York—did not … subject it to the long-arm jurisdiction of the Florida court.") (collecting cases).

■ *Subsection (ii):* Nor can it be said that by depositing plaintiff's check, which then was forwarded through the federal banking system, NSB should have expected that its act would have consequences in New York, within the meaning of section 302(a)(3)(ii). To conclude otherwise unfairly presupposes that NSB takes note of the location of the paying bank each time it accepts and deposits a check into an account held at NSB. Although no reported cases in New York or this circuit have expressly addressed this precise issue, other courts have concluded that the processing of a draft in the ordinary course of a bank's business should not, without more, subject the bank to jurisdiction of a foreign state having some connection to the

**17.** For a fuller discussion of the constitutional implications, *see infra* pages 463.

draft or underlying transaction. *See Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n. 7 (3d Cir.1984) ("Neither do we believe that the mere issuance of a check which finds its way to a Pennsylvania bank provides the requisite foreseeability of economic impact in Pennsylvania."); *cf. CitiBank*, 646 N.Y.S.2d at 263 (where Florida bank merely "placed a check [drawn on a New York bank] into the usual channels for collection[,] ... [t]his does not constitute conduct from which [the Florida bank] should reasonably anticipate being haled into court in New York."). As one federal court observed:

> Checks often follow circuitous routes during the clearing process.... [I]t would be unwise policy to hold a bank subject to the jurisdiction of any foreign state regardless of how fortuitous the bank's contact therewith, merely because the bank happens to conduct a business with certain interstate ramifications.

*Jack O'Donnell Chevrolet, Inc. v. Shankles*, 276 F.Supp. 998, 1004 (N.D.Ill.1967).

In any event, to succeed under section 302(a)(3)(ii), plaintiff also must make an adequate showing that NSB receives "substantial revenue" from interstate or international commerce. *See Balaban v. Wescott*, No. 96 CV 3177(ILG), 1996 WL 599722, at *4 (E.D.N.Y. Oct.7, 1996) (citing *Trafalgar Capital Corp. v. Oil Producers Equip. Corp.*, 555 F.Supp. 305, 310 (S.D.N.Y.1983) (Weinfeld, D.J.)). Conclusory assertions of jurisdiction are insufficient, even absent discovery. *See Jazini*, 148 F.3d at 184. Since plaintiff provides

no information whatsoever regarding NSB's purported interstate revenues, the jurisdictional claim under section 302(a)(3)(ii) fails on this ground alone. *See Sage Realty Corp. v. Barnhart Interests, Ltd.*, No. 02 Civ. 0725(LAK), 2002 WL 603035, at *2 (S.D.N.Y. April 18, 2002); *Bank of Cal. v. Smith Barney, Inc.*, No. 89–CV–551, 1997 WL 736529, at *5 (N.D.N.Y. Oct.31, 1997) (granting pre-discovery motion to dismiss) (citing *KIC Chems., Inc. v. ADCO Chem. Co.*, No. 95 CIV. 6321(MBM), 1996 WL 122420, at *8 (S.D.N.Y. Mar.20, 1996)); *Balaban*, 1996 WL 599722, at *4 (granting pre-discovery motion to dismiss).[18]

## D. *Constitutional Limitations*

■ More fundamentally, even if NSB's conduct were construed to fall within the reach of New York's long-arm statute, the exercise of personal jurisdiction over NSB would violate constitutional notions of fairness embodied in the due process clause.[19] As the court concluded in *CitiBank*, the Florida bank's placement of a New York check into the federal clearing process "does not constitute conduct from which [the bank] should reasonably anticipate being haled into court in New York." *CitiBank*, 646 N.Y.S.2d at 263 (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). Quoting from the Seventh Circuit's constitutional analysis in *Froning & Deppe, Inc. v. Continental Illinois National Bank & Trust Co.*, 695 F.2d 289, 291–92 (7th Cir.1982), the New York court agreed that "the fundamentals of substantial jus-

---

**18.** To be sure, the affidavit of NSB's Senior Vice President addresses only NSB's lack of contacts with New York, and does not discuss interstate or international commerce in general. *See* Eisinger Aff. However, plaintiff has averred no facts that would constitute a *prima facie* showing on this element.

**19.** *See generally Metro. Life*, 84 F.3d at 567–68 (noting that "[t]he due process test for personal jurisdiction has two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry.").

tice ... would be offended by basing jurisdiction over a non-resident bank upon the bank's mere acceptance of a check which indicates on its face its origin in the forum state." *Citibank*, 646 N.Y.S.2d at 263; *accord Jet Charter Serv., Inc. v. Koeck*, 907 F.2d 1110, 1114 (11th Cir.1990); *Gateway Leasing, Inc. v. Am. Bank*, 577 F.Supp. 908, 910–11 (D.Md.1984); *see also Dollar Sav. Bank v. First Sec. Bank of Utah, N.A.*, 746 F.2d 208, 213 (3d Cir.1984) (due process does not allow exercise of personal jurisdiction over non-resident bank where "the only contacts are that the funds originated and were repaid in the forum state.").

So too here, it cannot be said that NSB "purposefully directed [its] activities" toward New York so as to make it amenable to personal jurisdiction in that state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quotation omitted). To "subject[ ][NSB] to suit in any state from which a check cashed by one of its customers might originate" would *"hinder* the underlying policies of the several states which favor the free flow of commerce and of interstate banking transactions in particular." *Froning & Deppe*, 695 F.2d at 294 (emphasis in original) (quoted with approval in *Citibank*, 646 N.Y.S.2d at 263). "[S]uch a result would wreak havoc upon the orderly conduct of interstate business." *Froning & Deppe*, 695 F.2d at 294; *accord Citibank*, 646 N.Y.S.2d at 263. The exercise of personal jurisdiction over NSB in New York is impermissible as a matter of constitutional law.

### CONCLUSION

For the foregoing reasons, this Court recommends that NSB's motion to dismiss be granted, and that plaintiff's motion to further amend the pleadings be denied, based on lack of personal jurisdiction.

Any objections to the recommendations contained herein must be filed with the Honorable Nicholas G. Garaufis on or before January 27, 2004. Failure to file objections in a timely manner may waive a right to appeal the District Court order. *See* 28 U.S.C. § 636(b)(1); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir.1989).

The Clerk is directed to transmit copies of this Report and Recommendation, by Federal Express, to *pro se* plaintiff and defense counsel.

**SO ORDERED.**

Jan. 15, 2004.