OPINION OF THE COURT
Renee R. Roth, S.
The threshold issue in this proceeding to compel First Union Bank of Connecticut, formerly First Fidelity Bank and Union Trust Company (First Union), to render an accounting to this court as "de facto” trustee of three trusts established under the will of Harriett A. Schreiter, is whether the court has personal jurisdiction over First Union.
Mrs. Schreiter died on July 31, 1939 survived by two daughters, Ruth Binderman and Elsa Weekes. Under her will, admitted to probate by this court, testatrix created trusts for the life income benefit of each of her daughters and provided that, if the first daughter to die left no issue, the trusts continued for the benefit of the surviving daughter and, upon her death without issue, the principal of the trusts would be distributed to Mrs. Schreiter’s "heirs at law”. Letters testamentary and of trusteeship were issued to decedent’s daughter Ruth and Attorney Arthur Sutherland. Sutherland died on September 30, 1948. The nominated successor trustee, a bank, renounced its nomination and no substitute was appointed. Thus, Ruth served as sole trustee from 1948 until her death in 1988. The assets of the trust were held at Chemical Bank in New York.
In 1984, after daughter Elsa, who lived in Connecticut, apparently became incapacitated, First Union was appointed her conservator. By letters dated November 4, 1986 and April 17, 1987, Joseph Mattice, an attorney who represented Ruth in New Jersey where she was domiciled, informed First Union’s Vice-President, Richard W. Mann, that Ruth’s deteriorating mental condition prevented her from performing her duties as trustee. No application, however, was made to this court to have Ruth removed as trustee and a successor appointed. Instead, on May 23, 1987, First Union and the 90-year-old allegedly confused trustee executed an investment management agreement which provided in pertinent part: "You (First Union) are to invest and reinvest the property and funds in *708 this account without consulting me in advance as you may deem to be in my best interests and in accordance with such investment objectives as may have been mutually determined.” Thereafter, contrary to New York law prohibiting the removal of estate property from this State without court approval (SCPA 710 [4]; see, SCPA 711 [7]), the trust assets were transferred to First Union in Connecticut.
Although the record does not contain any correspondence between Ruth and First Union, there are several communications from the bank to Mattice. On October 30, 1987, First Union sent Mattice a copy of an internal memo concerning the bank’s investment policy with respect to the stock market decline on Blue Monday (Oct. 19, 1987) and indicated that Ruth’s income would be sent to Mattice.
Ruth died without issue on March 4, 1988. Her will, naming Mattice as executor and residuary beneficiary, was admitted to probate on April 11, 1988 by the Surrogate’s Court in Monmouth County, New Jersey. Two months later (on May 3, 1988) Elsa died, also without issue. Her will, admitted to probate in Connecticut, left her assets to her housekeeper. The death of Elsa, the remaining income beneficiary, terminated the trusts.
It is alleged that despite the fact that there was no duly appointed trustee and no income beneficiary, First Union continued to manage the trust assets as de facto trustee. On August 29, 1990, 29 months after the death of trustee Ruth, First Union by letter advised Mattice that: "It is our contention that you will have to contact the Surrogate’s Court which issued Letters Testamentary [sic] to Mrs. Binderman. The notification should include date of death and a request for the appointment of a temporary trustee to complete the administration of both these trusts. Union Trust should be considered for this appointment”.
On January 29, 1992, almost four years after the death of Ruth, Mattice filed a petition to settle the final accounts of these trusts in his capacity as executor of the estate of the deceased trustee. Incident to that proceeding, a guardian ad litem was appointed to represent Mrs. Schreiter’s "heirs at law”. The guardian filed an interim report which raised significant issues and requested the appointment of a successor trustee. After several conferences, a successor fiduciary was appointed on April 25, 1995 so that, inter alia, the trust assets could be returned to New York. Such trustee thereafter brought this proceeding to compel First Union to account for its management of the trusts as de facto trustee.
*709 The successor fiduciary observes that from March 1988 through the end of 1990, First Union paid itself a fee from the assets of the terminated trusts in the same amount as during Ruth’s life. Further, although First Union did not take quarterly fees at the end of 1990, in 1993 the bank paid itself fees for the period from September 8, 1990 through March 17, 1993. Finally, before transferring the assets to the successor trustee and contrary to his admonition, First Union paid itself additional fees. It is contended that the sum taken by the bank, without authorization after the trustee’s death, exceeds $90,000. It is also contended that, because of the bank’s conduct, the trust principal suffered a loss exceeding $1,000,000. Mr. Mattice died on July 13, 1995. First Union contends that it never was a trustee and in any event this court lacks personal jurisdiction.
We turn now to the question of jurisdiction. A court may obtain personal jurisdiction over a party in one of three ways. First, the court may have jurisdiction when the party to any cause of action has a sufficient presence in the State, e.g., conducts regular and systematic business within the State (see, CPLR 301). Second, the court may obtain "long-arm” jurisdiction over a party as to a particular cause of action based on the existence of certain minimum contacts with the forum State that relate to the cause of action (SCPA 210; CPLR 302 [a]; International Shoe Co. v Washington, 326 US 310). Finally, the court may exercise personal jurisdiction over a party not otherwise subject to the jurisdiction of the court if the party consents (Restatement [Second] of Conflict of Laws §§ 32, 43).
Since First Union contests this court’s jurisdiction and it is conceded that its ties to New York are too tenuous to support a finding of general jurisdiction, jurisdiction, if it exists, must be based on one of the long-arm statutes.
The statute governing long-arm jurisdiction in the Surrogate’s Court, SCPA 210, was enacted in 1967 with the express purpose of expanding the court’s in personam jurisdiction (see generally, Revisers’ Notes to SCPA 210, Sixth and Final Report of Temp St Commn on Estates, 1967 NY Legis Doc No. 19, Appendix M, at 453 [hereinafter Bennett Report]). The statute provides three general bases of jurisdiction, two of which parallel provisions of the CPLR. The third jurisdictional predicate of the statute, SCPA 210 (2) (b) (the quoted provision), which has no CPLR counterpart (see, Independence Sav. Bank v Freed, 154 Misc 2d 472), provides that: "The receipt and acceptance of any property paid or distributed out of and as part of the *710 administration of an estate subject to the jurisdiction of the court, other than the payment of taxes under article 26 of the tax law to the commissioner of taxation and finance, shall constitute a submission by such recipient to the jurisdiction of the court as to any matter concerning the payment or distribution, including proceedings for the recovery thereof.”
This provision confers in personam jurisdiction in a case in which a nondomiciliary has received estate or trust property (SCPA 103 [19]) with respect to all matters relating to such payment (see, Matter of Casey, 145 AD2d 632; see also, Bennett Report, at 453; Turano and Radigan, New York Estate Administration § I [2], at 27).
First Union argues that SCPA 210 (2) (b) is not applicable in this case because petitioner has not alleged that First Union received or accepted property paid or distributed from the estate but rather that First Union retained funds in payment of its custodial fees. It appears that First Union contends that receipt of assets in a custodial capacity, as opposed to an individual capacity, is outside the scope of the quoted provision. The petition, however, alleges, and First Union admits, that it received trust assets from the duly appointed trustee. For the reasons described below, the court determines that this constitutes receipt of assets from the estate for purposes of this statute (SCPA 103 [19]).
Although there has been no judicial comment on this particular question, nothing in the language of the quoted provision circumscribes its applicability to certain classes of recipients. Indeed, the 1990 amendment to SCPA 210 excluding payment of State estate taxes from the ambit of the statute, clearly indicates that creditors were intended to be encompassed within the purview of this provision. Thus, even in the absence of the allegation of de facto trustee status, First Union would fall under the language of the quoted provision.
Although First Union further argues that the reach of SCPA 210 (2) (b) does not extend to compelling an accounting, particularly where the nondomiciliary has turned over the assets to the successor trustee, such an interpretation ignores the very purpose of an accounting, which is to ascertain whether the proper assets were returned and whether the assets had been appropriately managed. The quoted provision specifically includes proceedings for the recovery of property distributed without limiting its scope to such proceedings. If the proceeding concerns the payment of estate assets, it is governed by SCPA 210 (2) (b). Furthermore, if the quoted pro *711 vision were applicable only to nondomiciliaries who are still in possession of the assets at the time the proceeding is commenced, the statute would be meaningless because the recipient could circumvent it by giving away the property. Clearly, the quoted provision is applicable where the proceeding concerns distribution of property from the estate to a nondomiciliary.
Moreover, the application of SCPA 210 (2) (b) to First Union satisfies due process, which requires that the respondent "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice’ ” (International Shoe Co. v Washington, supra, at 316). Three questions must be addressed here with respect to due process: (1) whether the quoted provision may apply to a nondomiciliary who is not a beneficiary under, or fiduciary of, the will or a creditor of the estate and, therefore, may be unaware of this court’s control over the assets received; (2) whether the lapse of time between receipt of the assets (1987) and the commencement of this proceeding is unfairly long; and (3) since the distributed assets have been turned over, whether there are sufficient minimum contacts between this State and the nondomiciliary.
As to the first question, even if First Union were a mere custodian (as opposed to an alleged de facto trustee), it clearly knew that the assets in question came from a trust fund located in New York.
As to the issue of lapse of time, a recipient of estate assets required to appear in court many years later may have a valid due process argument (see, Matter of Chodikoff, 54 Misc 2d 785). In this case, however, the letters of First Union to Mattice in August and September of 1990 show an ongoing relationship. Indeed, recently, First Union assisted Mattice in the preparation of the accountings. Thus, First Union cannot fairly contend unfair surprise.
Finally, the mere return of assets to a successor fiduciary does not defeat jurisdiction where the issue is the handling of the fund by the former holder. First Union’s custody of trust assets known to be property subject to the jurisdiction of this court, together with its acceptance of investment discretion from a trustee allegedly unable to perform fiduciary duties, clearly places it under this court’s jurisdiction pursuant to SCPA 210 (2) (b). Although additional jurisdictional predicates might be available under CPLR 302 (a) and SCPA 210 (2) (a), they involve factual issues which would require a hearing (Ben *712 Soep Co. v Highgate Hall, 71 AD2d 825; Tonelli v Chase Manhattan Bank, 49 AD2d 731). However, under SCPA 210 (2) (b), which is clearly applicable, a hearing on jurisdiction is not required.
Based on the foregoing, it is concluded that the court has personal jurisdiction over First Union.