OPINION OF THE COURT
Lee L. Holzman, J.
In this proceeding in which the guardian ad litem for two infants seeks to recover on their behalf funds that were allegedly misappropriated, two of the respondents, American Heritage Federal Credit Union, a Pennsylvania financial institution, and Anoka Hennepin Federal Credit Union, a Minnesota financial institution, each made a separate motion, pursuant to CPLR 3211 (a) (8), to dismiss the petition for lack of personal jurisdiction. The guardian ad litem and two of the other respondents, the City of New York and the law firm that represented the infants’ mother in her capacity both as the guardian of their property and as the administratrix of their father’s estate, oppose the motion.
The funds at issue were recovered in an action alleging that medical malpractice caused the infants’ father’s wrongful death. *397 Although the decrees appointing the infants’ mother as guardian of their property and the decree approving the compromise of the wrongful death action directed that all funds for the infants’ benefit should be made payable to their mother as guardian of each infants’ property jointly with the guardianship clerk of this court, the City issued two checks drawn on a bank in New York State payable to the order of the mother “PNG” of each infant jointly with Apple Bank. The parties disagree as to whether the checks read “JHO” Apple Bank or “JWO” Apple Bank. The City mailed the checks to the respondent law firm which, in turn, forwarded the checks to the mother in Pennsylvania. The law firm sent two letters to the mother which might be viewed as contradictory with respect to whether these checks belonged to her or her children. In any event, and even though the checks were not endorsed by Apple Bank, the mother negotiated the two checks at the Philadelphia branch of the movant Heritage. Heritage then transmitted the funds to the movant Anoka in Minnesota for deposit in the mother’s personal checking account. It appears that the mother withdrew most of the infants’ funds before her account was restrained.
Both movants contend that they have insufficient contacts with New York for this court to exercise personal jurisdiction over them with respect to the transactions at issue herein. In support of Heritage’s motion, its vice-president of branch operations avers that: (1) Heritage’s 20 credit union branches are located in Pennsylvania, its employees all work in Pennsylvania, and it is authorized to do business only in Pennsylvania; (2) it owns no property and conducts no business in New York; (3) it participates in a shared branching issuer participation agreement with Pennsylvania Credit Union Services Corporation (PACUSC) limited to transactions processed within Pennsylvania; (4) PACUSC, in turn, maintains an agreement with Credit Union Services Corporation (CUSC), to afford Heritage members access to their accounts when they travel outside of Pennsylvania; and (5) Heritage derives minimal revenue from its participation in CUSC, and the revenue generated barely covers the costs of its participation in the shared branch network.
In support of Anoka’s motion, its chief financial officer and a vice-president avers that: (1) substantially all of Anoka’s 21,000 credit union members are residents of Minnesota; (2) it is authorized to do business only in Minnesota where all of its offices, branches and employees are located; (3) it has no contracts, agreements or affiliations with any New York entity, *398 it has no agents in New York and does not solicit business in New York; (4) it participates in a shared service center network agreement with Minnesota Credit Union Services Corporation (MnCUSC) and with CUSC; (5) the CUSC network is available to its members as a benefit, and it is not a revenue-generating endeavor, as Anoka does not charge and collect fees for member transactions at other CUSC credit unions and, instead, Anoka pays a fee whenever its members transact business within the CUSC network; (6) pursuant to its agreement with MnCUSC and CUSC, Anoka is required to provide separate tellers and equipment dedicated solely for the purpose of providing nonmembers access to the shared services network; and (7) although it collects fees for nonmember transactions at its local credit union branches, the cost associated with providing separate tellers and equipment outweigh the fees generated, resulting in a financial loss for each year that it maintains the MnCUSC and CUSC agreements.
The parties opposing the motion contend that the movants have sufficient contacts with New York for this court to exercise personal jurisdiction under either SCPA 210 (2) (b) or CPLR 302 (a) (1) or (3). With respect to the two checks at issue they note that the New York payor of the check, the City of New York, issued the checks as a result of an order entered in this court, the checks were drawn on a New York bank and paid by that bank. Moreover, they assert that the movants were negligent in permitting the checks to be deposited without the endorsement of one of the payees. They further argue that the movants’ membership in CUSC, which has 99 branches in New York, creates a sufficient nexus between the movants and New York for the exercise of personal jurisdiction over the movants. In the alternative, they request an evidentiary hearing on the jurisdictional issue.
CPLR 302 provides in pertinent part as follows:
“(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, . . . who in person or through an agent:
“1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or . . .
“3. commits a tortious act without the state causing injury to person or property within the state, . . . , *399 if he
“(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
“(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.”
CPLR 302 was enacted to expand the power of the state to exercise personal jurisdiction over a nondomiciliary even though the party has no physical presence in the state, provided that the party has sufficient minimum contacts with New York and benefitted therefrom, thus fulfilling due process requirements for exercising such jurisdiction. Nonetheless, personal jurisdiction may be exercised over a nondomiciliary for a single transaction only where the “activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted” (Kreutter v McFadden Oil Corp., 71 NY2d 460, 467 [1988], citing George Reiner & Co. v Schwartz, 41 NY2d 648, 651-652 [1977] and Parke-Bernet Galleries v Franklyn, 26 NY2d 13, 16-17 [1970]).
Here, no party asserts that the movants acted in concert with the respondent guardian of the infants’ property. Under these circumstances, even if it is concluded that the checks were not endorsed by one of the payees, the acceptance for deposit of two checks by a financial institution located outside of New York, and the forwarding of the instruments for collection through the usual channels to the New York bank upon which ■ the checks were drawn by the New York payor, standing alone, does not constitute a sufficient contact with this state for the exercise of personal jurisdiction over either of the nondomiciliary movants (see Baptichon v Nevada State Bank, 304 F Supp 2d 451 [ED NY 2004], affd 125 Fed Appx 374 [2d Cir 2005]; Symenow v State St. Bank & Trust Co., 244 AD2d 880 [1997]; Faravelli v Bankers Trust Co., 85 AD2d 335 [1982], affd 59 NY2d 615 [1983]). In short, the mere forwarding of a check to be honored by the New York bank upon which it was drawn is a fortuitous circumstance which does not constitute a purposeful act by a nondomiciliary financial institution sufficient to subject it to personal jurisdiction under CPLR 302 (a) (Baptichon v Nevada State Bank, 304 F Supp 2d at 461).
The court also finds that the movants’ direct or indirect relationship with CUSC does not constitute a contact with New York sufficient for this court to exercise long-arm jurisdiction *400 over them under any of the provisions of CPLR 302 (a). The checks at issue were negotiated at a Heritage branch in Pennsylvania, and not in a CUSC network branch located in New York. Therefore, the court may not exercise jurisdiction under CPLR 302 (a) (1) as there is no relationship, substantial or otherwise, with respect to the arrangement between the movants and CUSC, which allows their members to use a CUSC branch in New York to access their accounts located in another jurisdiction, and the claims asserted herein which arise out of deposits made outside of New York (see Kreutter v McFadden Oil Corp., 71 NY2d at 469). Furthermore, it is not disputed that the primary reason that the movants have a relationship with CUSC is to benefit their members who might travel to other jurisdictions. The movants’ members may perform banking transactions at the CUSC branches located in New York only with respect to the members’ accounts in the states in which each of the movants has branches. Thus, CUSC network branches in New York perform a similar function as ATM machines for the movants’ members. The fact that a nondomiciliary bank allows its depositors to have access to their accounts while in New York via an electronic transfer does not mean that such services can be the cause for injury to person or property within New York or that the situs of the service is in any place other than where the accessed account is located (see Rollins v People’s Bank Corp., 2004 WL 2725039, 2004 US Dist LEXIS 24016 [SD NY 2004] [holding that the fact that a Connecticut bank afforded its depositors access to their accounts in Connecticut by using an ATM machine located in New York did not constitute a sufficient contact with New York under CPLR 302 (a) (3) to warrant the exercise of personal jurisdiction over the nondomiciliary Connecticut bank]).
The last issue is whether personal jurisdiction may be exercised over the movants under SCPA 210 (2) (b) which provides, in pertinent part, as follows:
“The receipt and acceptance of any property paid or distributed out of and as part of the administration of an estate subject to the jurisdiction of the court, . . . , shall constitute a submission by such recipient to the jurisdiction of the court as to any matter concerning the payment or distribution, including proceedings for the recovery thereof.”
The reliance upon Matter of Schreiter (169 Misc 2d 706 [1996]) and Matter of Casey (145 AD2d 632 [1988]), in support of the contention that personal jurisdiction may be exercised over the movants under SCPA 210 (2) (b), is misplaced. In Matter ofSch *401 reiter (169 Misc 2d 706 [1996]), the court held that it could exercise personal jurisdiction over a Connecticut bank which acted as the de facto trustee for a New York trust and received compensation for its services. In Matter of Casey (145 AD2d 632 [1988]), the Court held that personal jurisdiction could be exercised over a nondomiciliary beneficiary of the estate in a proceeding seeking to recover an erroneous distribution that she received from the estate.
Here, checks were received and accepted by the infants’ mother, a payee. The nondomiciliary movants were merely the depositories the mother happened to select to deposit the funds for credit to her own account. Thus, it was the mother, and not the movants, who received a payment or distribution as part of the administration of the estate. None of the cited authority holds that personal jurisdiction may be exercised over a nondomiciliary depository merely because the payee of an estate check opted to negotiate and deposit the check at a branch of the non-domiciliary located outside of New York. To the contrary, in Matter of Bruno (126 AD2d 845 [1987], lv denied 69 NY2d 610 [1987]), even though the decedent’s brother, a Pennsylvania domiciliary, was given certain of the decedent’s property to hold, which he subsequently delivered to the estate, the Court held that personal jurisdiction could not be exercised over him under either CPLR 302 (a) (1) or SCPA 210 (2) (b) in the estate’s proceeding to recover from him the proceeds of a preexisting Pennsylvania bank account held in the joint names of the decedent and the brother, as the estate had not made any payment to the brother nor was there any relationship between the brother’s acts in New York and the estate’s claim to the Pennsylvania bank account. Here, neither of the nondomiciliary movants was the recipient of any payment or distribution made as part of the administration of the estate nor is there a nexus between the claims asserted herein and any acts by the movants in this state to fulfill the due process requirements for exercising personal jurisdiction over the movants under either SCPA 210 (2) (b) or CPLR 302 (a).
For the reasons stated herein, the court holds that there is no basis for the exercise of personal jurisdiction over the movants. Accordingly, the court grants the movants’ respective motions to dismiss all claims against them, whether interposed in the petition or in any cross claim.